REIDUN STRØMSHEIM # 104938
LINDA SORENSEN # 72753
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Fax: (415) 989-2235
rstromsheim@stromsheim.com

Attorneys for Plaintiff
CAROL W. WU, Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>INTEGRATED PACKAGING ASSEMBLY CORP.<br>Dba IPAC<br>Tax ID # 47-0929011<br><br>      Debtor.<br>_____<br><br>CAROL W. WU, Trustee,<br>      Plaintiff,<br>v.<br><br>VICTOR A. BATINOVICH; i2a TECHNOLOGIES,<br>      Defendants. | Case No. 07-53563 ASW<br><br>Chapter 7<br><br><br><br><br><br><br><br>AP # 08-5333 |

**FIRST AMENDED COMPLAINT FOR RECOVERY BASED ON VOID TRANSFER;
DAMAGES FOR ABUSE OF BANKRUPTCY CASE;
AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;
SUBSTANTIVE CONSOLIDATION; BREACH OF FIDUCIARY DUTY;
CONVERSION; UNJUST ENRICHMENT;
ALTER EGO AND OBJECTION TO CLAIMS IF ANY**

COMES NOW, Plaintiff, Carol W. Wu, trustee of the above-referenced bankruptcy estate ("Trustee" or "Plaintiff"), and alleges as follows:

**JURISDICTION**

1. Jurisdiction over this action exists pursuant to 28 U.S.C. §157 and 28 U.S.C. §1334, and venue is proper pursuant to 28 U.S.C. § 1409.

2. This adversary proceeding is a core matter pursuant to 28 U.S.C. § 157.

**PRELIMINARY ALLEGATIONS**

3. The above-entitled bankruptcy case (the "Case") was commenced by the filing of a voluntary petition for Chapter 11 relief on October 31, 2007. The Case was converted to Chapter 7 on September 18, 2008, and Carol W. Wu is the duly appointed, qualified and acting trustee of the Debtor's estate.

4. The records of the California Secretary of State reflect that a company by the name of Integrated Packaging Assembly Corp, Inc. dba IPAC, ("OldCo") was incorporated under the laws of the State of California in 1992. The address for the company was 2221 Old Oakland Road, San Jose, California. (the "San Jose Premises"). The principal of the company was Victor A. Batinovich ("Batinovich"), and he was the agent for service of process. The Trustee is informed and believes and thereupon alleges that the company went public in 1996-97, and was shortly thereafter sold to a Taiwanese conglomerate by the name of OSE.

5. The records of the California Secretary of State reflect that Integrated Packaging Assembly Corp, Inc., dba IPAC (the "Debtor" and/or "NewCo") was incorporated on August 12, 2003 (OldCo and NewCo have different corporate numbers) and that the old IPAC of 1992 (OldCo) has "merged out. The records reflect that NewCo has the same address as OldCo and that Victor A. Batinovich again is the agent for service of process.

6. The Trustee is informed and believes that NewCo/Debtor was established to purchase from OSE USA, Inc. the same or similar assets that had been purchased in OldCo in the nineties. The Asset Purchase Agreement (9/3/03) between NewCo/Debtor and OSE reflects that the assets were purchased for $1 million, of which $500,000 was paid in cash, and the balance as a carryback promissory note in the sum of $500,000 that was signed by the Debtor. The Trustee is informed and believes and thereupon alleges that Batinovich contends that the initial $500,000 down payment paid to the seller for the assets was procured through a loan made by Batinovich to the Debtor in return for which Batinovich was given a promissory note by the Debtor in the sum of $500,000. The Trustee is informed and believes and thereupon alleges that, resultantly, the Debtor had no operating capital except insofar as Batinovich's contribution is recharacterized as

1  such. The Trustee is further informed and believes and thereupon alleges that the carryback
2  promissory note of the Debtor for $500,000 to OSE USA was guaranteed by Batinovich, and
3  became due on or about September 3, 2006. Batinovich has stated that the carryback promissory
4  note was cancelled.

5      7.    The operations of the Debtor's business continued at the San Jose Premises. Title to
6  the building was transferred several times during the operation, including a transfer to Great-West
7  Life & Annuity, with which company NewCo/Debtor negotiated a lease throughout the Spring of
8  2006. The Trustee is informed and believes and thereupon alleges that NewCo/Debtor signed
9  several different documents relating to the lease, including an amended lease on March 6, 2006,
10 and another lease dated May 7, 2006.

11     8.    On or about October 10, 2006, the San Jose Premises were purchased by a
12 company entitled Old Oakland Road Associates, LLC ("OORA").

13     9.    Shortly after the purchase of the San Jose Premises by OORA, NewCo/Debtor
14 commenced a lawsuit against OORA in state court alleging that the San Jose Premises were in
15 disrepair. The Trustee is informed and believes and thereupon alleges that after several months of
16 litigation between NewCo/Debtor and OORA, a settlement agreement was executed on July 26,
17 2007 (and finalized in October 2007) wherein NewCo/Debtor agreed to dismiss the state court
18 action, that it would agree to the entry of a judgment of possession but that NewCo/Debtor could
19 maintain possession through and including October 31, 2007, and wherein OORA agreed not to
20 enforce the judgment of possession until November 1, 2007.

21     10.    After the filing of the bankruptcy case on October 31, 2007, the Debtor remained in
22 possession of the San Jose Premises. OORA filed a motion for relief from stay to proceed with the
23 eviction. NewCo/Debtor defended against the relief from stay motion and against being
24 dispossessed from the San Jose Premises.

25     11.    Victor A Batinovich is the Designated Corporate Officer of the Debtor; the sole
26 shareholder of the NewCo/Debtor; and its CEO.

27     12.    The Case was filed through a skeletal bankruptcy petition wherein the Debtor
28 represented that it had assets of a value of $1-100 million.

13. On November 2, 2007, OORA filed, *inter alia,* a motion for relief from stay and for an order directing the Debtor to surrender real property, see Docket # 7, 8, 9, 10 and 11.

14. In the Declaration of Victor A. Batinovich ("Batinovich Declaration"), filed in the bankruptcy case as Docket # <u>17</u> on November 8, 2007, in opposition to the motion by OORA, Mr. Batinovich made a number of allegations under penalty of perjury, including the following:

> 4. ...Debtor's current business commenced in approximately September 2003 when it purchased assets from a subsidiary of OSE USA, Inc. Debtor's business is primarily packaging (chip assembly) and testing of semiconductors. Debtor's business is highly technical, requires the use of technical labor and sophisticated equipment, and requires a controlled environment and clean rooms. Debtor's customer base includes both government and non-government business both domestically and internationally.
>
> 5. Debtor currently employees[sic] approximately fifty five full time employees, most of which are technically trained and skilled employees with various degrees and with specified training and experience operating and maintaining Debtor's technical equipment. Many of Debtor's employees have been employed by Debtor, or Debtor's predecessors, for ten or more years. Debtor's business is generally in operation on a sixteen hour day with approximately one week a month allocated to two twelve four hours shifts. Debtor's monthly payroll is approximately $150,000.
>
> 6. Debtor's monthly revenue was, prior to the last few months, approximately $470,000. Since approximately, July 2007, revenue has decreased approximately fifty percent. The decrease in revenue is a result of many factors, including but not limited to, not taking on new business or orders due to quality control related to various equipment failures, material losses related to these conditions, (yield losses of customer consigned chips), contractual compliand, and health and safety issues which relate directly to the deplorable condition fo the Premises as well as OORA threats for eviction.
>
> 7.Debtor's[sic] has significant assets, primarily highly technical equipment used in the assembly and testing of semiconductors. Single pieces of equipment have a replacement cost of approximately $1,000,000. The estimated replacement value of Debtor's equipment is approximately $45,000,000 and the estimated liquidation value of between $10,000,00[sic] and $15,000,000. These estimates are based on a valuation done within the last two years as part of a potential joint venture..........................
>
> 14. Debtor proceeded with is[sic] diligent search and inspection of dozens of commercial properties for a commercial property which could satisfy its specific and special electrical and power needs and could satisfy Pacific Gas & Electric's approval process....
>
> 15. In approximately August 2007, Debtor signed a lease for a new facility in Fremont, California......Debtor hired its own contractors to ready the Fremont facility for occupancy by the Debtor. Debtor has committed to spend approximately $600,000 to ready the Fremont facility for occupancy....
>
> 17. Debtor filed an emergency voluntary petition under chapter 11 of Title 11 of the United States Code on October 31,2007, commencing the instant action. The Debtor has not set forth a plan of reorganization having filed the emergency petition in an effort to protect itself from imminent and potentially permanent closure, preserve the ongoing value and existence of the business, not fall out of compliance with outstanding contracts, and preserve the very existence of the business. The Debtor is currently in consideration and

preparation of a plan of reorganization that would allow it to move to its Fremont facility...

18. On November 1, 2007, the Santa Clara county Sheriff and OORA proceeded to enforce the judgment of possession by demanding Debtor's employees, under threat of arrest, stop working and leave the Premises. Debtor's employees were in production and were not allowed to stop production in proper form and power down the equipment......

19. If Debtor is forced to surrender the Premises before its new facility is ready for occupancy and operation, Debtor may be subject to imminent and potentially permanent closure, significant loss of its ongoing value, significant risk of falling out of compliance with outstanding contracts, loss of customers and employees, and loss of the very existence of the business.

20. In addition, if Debtor is forced to surrender the premises before its new facility is ready for occupancy and operation, Debtor may have to layoff[sic] its employees, cancel existing contracts, refuse potential new business, advise customers that it cannot comply with existing contractual deadlines, and expose itself to potential claims by customers. The potential financial consequences of a forced surrender of the Premises before Debtor's new facility is ready for occupancy and use are so significant as to be a direct threat to the ability to continue as an ongoing concern and provide any recovery to creditors.

15. At the hearing on the motion for relief from stay, on November 9, 2007, counsel for the Debtor argued strenuously on behalf of the Debtor, its employees and business, and was able to obtain time sufficient for the Debtor to move to a new facility located in Fremont, where the Debtor alleged that it was leasing new space, as set forth in paragraph 14: 13-15 above.

16. On November 27, 2007, the Debtor filed a Status Conference Statement ("SCS") wherein the Debtor maintained that it was a business with 55 employees, etc. Section C of the SCS, p 3-4, described in detail how the Debtor in August, 2007, had signed a lease for a new facility in Fremont, California, stating as follows:

As a result of Debtor's dealings with OORA and the Premises, it proceeded with a diligent search and inspection of dozens of commercial properties for a commercial property which could satisfy its specific and special needs [sic] electrical and power needs

Debtor's Fremont landlord could not satisfy Debtor's time line for completion of the required build out. Therefore, Debtor hired its own contractors to ready the Fremont facility for occupancy by Debtor. Debtor has committed to spend approximately $600,000 to ready the Fremont facility for occupancy. Debtor's contractors have a deadline of November 30, 2007.

17. Debtor had obtained an extension to stay in the San Jose Premises to December 10, 2008.

18. At the Status Conference hearing at 2 p.m. on November 30, 2008, the Debtor appeared through its attorneys, and Batinovich was in the courtroom. The Debtor represented to

the Court that it was still in the process of moving out of the San Jose Premises, in accordance with the representations that had been made in the SCS. Upon being questioned by the Court whether any one had anything to add to the status of the case, no further statement was made and the Court set a new status conference for February 8, 2008.

19. At the initial Debtor interview with the United States Trustee on January 8, 2008, Batinovich for the first time took the position that the Debtor had sold its business to a company named "i2a" in 2006. At such interview Batinovich stated that the Debtor had no employees and no business, which facts had not been disclosed previously.

20. At some later point, prior to the conversion of the case to Chapter 7, Batinovich did eventually produce to certain creditors of the estate a copy of an asset purchase agreement ("APA") purporting to show that the assets of NewCo/Debtor had been sold to i2a Technologies, Inc ("i2a") on January 28, 2006. A copy of the APA is attached as Exhibit E to Healy's Supplemental Declaration in Opposition to Conversion, Docket # 111.

21. The records of the California Secretary of State reveal that a corporation by the name of i2a Technologies was incorporated on 4/14/05, giving the Old Oakland Road (San Jose Premises) address, and listing Batinovich as the agent for service of process.

22. In the APA i2a agreed to pay NewCo/Debtor $750,000 for the purchase of the assets of NewCo/Debtor, including all accounts receivable, assignment of lease (only the Old Oakland Rd. Premises were left) etc. The sale was to be free and clear of liens, other than the lien in favor of Batinovich.

23. Batinovich had purportedly received a promissory note from NewCo/Debtor on September 3, 2003 (which is the date of the purchase from OSE USA- see above) in the sum of $500,000, and had purportedly received a security agreement two years later on October 4, 2005, perfected by a UCC-1 against the Debtor's assets, filed with the Secretary of State on October 4, 2005. See Exhibit "B" to Healy's Supplemental Declaration in Opposition to Conversion Docket # 111.

24. The purchase price of $750,000 purportedly paid or to be paid by i2a is set forth in the APA, and consisted of extinction of a $750,000 debt owed by NewCo/Debtor to a Malaysian

company by the name of PTA. The manner in which the extinction was purportedly accomplished was by producing documents demonstrating that i2a was owed approximately $1.5 million by PTA, and that i2a would reduce its outstanding claim against PTA by $750,000, equivalent to the purchase price. The Trustee reserves the right to amend concerning rights of action that may exist concerning i2a's possible usurpation of NewCo/Debtor's assets and opportunities.

25. Batinovich has filed with the Court a document showing how the i2a claim against PTA arose - and is a purported invoice dated 12/12/05 from i2a to PTA, listing salary from March 2004 prospectively though March 2006 for one Shimada, 24 months at $7,500 = $ 180,000; Batinovich's 13 trips to Japan & Malaysia at $6,500 = $ 84,500; "Chris" (10) trips to Penang-Malaysia, $ 30,768; Chris' salaries working in Penang 2042 hours (equals 255 days at 8 hrs/day) $86.54, $175,156.96; i2a/AIS Process & Technology Transfer to PTA $1,000,000, plus various other credits and debits. See Exhibit E to Healy's Supplemental Declaration in Opposition to Conversion, Docket # 111.

26. The Debtor availed itself of the protections afforded to a debtor pursuant to the United States Bankruptcy Code, and caused the usage of the resources of the Court, of the Office of the United States Trustee, and of its creditors. The Debtor initiated estate administration, whereby any trustee thereof had the duty to investigate the acts, conduct and property of the Debtor and the conduct of the Chapter 11 period of the Case. The Debtor undertook duties set by law and as a trustee of the estate.

27. Creditor(s) of the estate had filed and fought a motion for relief from stay and taken the deposition of Batinovich, among other costly efforts in participation in the Case.

28. At the Debtor's Meeting of Creditors pursuant to Section 341 of the United States Bankruptcy Code, Batinovich appeared for the Debtor and testified under penalty of perjury that he did not know where the Debtor's financial records were located.

**FIRST CLAIM FOR RELIEF**
**(Conveyance of Personal Property Without Delivery Cal. Civil Code §3440; 11 U.S.C. §544(a), §544(b))**

29. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

30. Plaintiff is informed and believes and thereupon alleges that as of the date of the filing of the petition commencing the Case, nor thereafter as set forth above, there had been no immediate delivery of the property of NewCo/Debtor to i2a (upon any purported sale) accompanied by an actual and continued change of possession of the property of NewCo/Debtor.

31. Plaintiff is informed and believes and thereupon alleges that Batinovich and i2a concealed any purported transfer, the discovery of which was not made until January 8, 2008, at the earliest, as material hereto.

32. There exist creditors of NewCo/Debtor whose claims were in existence at the time of the purported transfer, and who became creditors while NewCo/Debtor remained in possession, including but not limited to the landlord OORA.

33. Any purported transfer from NewCo/Debtor to i2a is void as against Plaintiff with the rights and powers granted to a trustee in bankruptcy.

34. Batinovich and i2a purport to hold the assets of NewCo/Debtor adversely to the Trustee, and have been consuming and using them in a business located in Fremont, California, without turning over their value or their proceeds, and without accounting to the Trustee. Plaintiff is informed and believes and thereupon alleges that the value of the assets is no less than $10,000,000 (ten million dollars) according to proof.

WHEREFORE, Plaintiff requests relief as set forth below.

**SECOND CLAIM FOR RELIEF**
**(Unlawful Postpetition Transfers 11 U.S.C. §549; Void Interference with the Estate 11 U.S.C. §362; Concealmient and Receipt of Assets 18 U.S.C. §152)**

35. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

36. Plaintiff is informed and believes and thereupon alleges that Batinovich and i2a effectively transferred possession of the assets of NewCo/Debtor to themselves after the filing of the petition commencing the Case, without any Order from this Court permitting the transfer of possession or transfer of ownership.

37. Plaintiff is informed and believes and thereupon alleges that Batinovich and i2a knowingly and fraudulently concealed, and continue to conceal, from the Trustee property

8

belonging to the estate of Debtor. Batinovich and i2a knowingly and fraudulently received a material amount of property from the Debtor after the filing of the Case with intent to defeat the provisions of Title 11.

38. Batinovich and i2a interfered with the administration of the estate, and have caused Plaintiff to incur expense, including legal expense according to proof, to obtain redress for violations of the automatic stay.

39. To the extent applicable, i2a and Batinovich violated the automatic stay in enforcing a claim to the assets of the Debtor after the filing of the petition commencing the Case, in obtaining possession of property of the estate, in exercising control over property of the estate.

40. Any and all transfers and acts in violation of the automatic stay are void as against Plaintiff as trustee in bankruptcy.

WHEREFORE, Plaintiff requests relief as set forth below.

### THIRD CLAIM FOR RELIEF
### (Contempt of Court, Fraud on the Court, Abuse of Process
### 11 U.S.C. §105(a))

41. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

42. Plaintiff is informed and believes and thereupon alleges that in statements made to the Court and to the United States Trustee during the Case concerning Debtor's business, Batinovich intentionally misled the Court in that he made all of the above stated affirmative assertions about the Debtor and its business activities, and for several months concealed from the Court, the United States Trustee, and creditors that he intended to take a contrary position at a later date, that all of the assets of the Debtor allegedly had been sold nearly two years prior to the bankruptcy filing, that the Debtor had no employees, that the Debtor had no lease for new premises in Fremont. He concealed his intention to take control of the assets of Debtor in the move to Fremont until after the move had been accomplished.

43. In the event that there had actually been a transfer of assets of NewCo/Debtor in 2006 that is determined valid as against the rights of creditors, the actions of Batinovich in misleading the Court and creditors in order to take advantage of the bankruptcy filing for himself

STROMSHEIM & ASSOCIATES

Case: 08-05333   Doc# 3   Filed: 12/09/08   Entered: 12/09/08 15:42:15   Page 9 of 17

9

and his company i2a was in fraud of the Court and a use of process for which it was not designed.

44. Had not Batinovich made the misrepresentations, he would not have been able to achieve the change of possession of the assets to himself and i2a as a consequence of the Fremont move as did occur during the concealment. Instead, Plaintiff is informed and believes and thereupon alleges that there would have been an earlier investigation of the circumstances of the bankruptcy filing, an earlier investigation into the validity of any purported 2006 transfer of assets away from the Debtor, the adequacy of consideration, and other material facts, with a far different outcome.

45. In Batinovich's statements made to the Court during the Case, as the representative of the Debtor, concerning its ongoing manufacturing activities, wherein a duty of candor existed to reveal such facts, Batinovich failed to disclose to the Court that the Debtor had not been in business for nearly two years, if that was the fact.

46. In Batinovich's statements made to the Court during the Case concerning its ongoing business activities, wherein a duty of candor existed to reveal such facts, Batinovich failed to disclose to the Court that Debtor's leases for the San Jose Premises were entered into after the Debtor allegedly had sold itself to i2a, and was without any business operation, employees or equipment, if those were the facts.

47. Batinovich failed to disclose to the Court during the Case that the Debtor's negotiations with OORP for vacating the San Jose Premises were made at a time when the Debtor allegedly had sold itself to i2a, was without any business operation, employees or equipment, and was not the entity in possession of the San Jose Premises, if those were the facts..

48. Debtor failed to disclose to the Court during the Case that it had allegedly sold itself to i2a, and was without any business operation, employees or equipment, and thereby without any of the assets that it was telling the Court it would operate in order to reorganize and repay its creditors, if those were the facts.

49. Batinovich and his company i2a intentionally and deliberately used the bankruptcy proceedings to benefit themselves while Batinovich was were acting as an officer of the Court, and those acts constituted fraud on the Court. The herein alleged blameworthy conduct of Defendants,

and each of them, during the Chapter 11 period of the Case was an abuse of the judicial system and constituted contempt of Court. Plaintiff has been required and is continuing to be required to expend monies and incur expenses in the investigation and remedial actions required as a result of these acts, including attorneys and accounting fees and other costs of investigations and presentation of evidence, according to proof. Plaintiff is informed and believes and thereupon alleges that Debtor was required to incur and pay legal expense for the conduct of the Chapter 11 proceedings, according to proof. Plaintiff is informed and believes and based thereon alleges that these acts have caused additional damages to the bankruptcy estate in the loss and diminution of assets that should otherwise have been available for administration, according to proof.

WHEREFORE Plaintiff requests relief as set forth below.

## FOURTH CLAIM FOR RELIEF
### (Fraudulent Transfers 11 U.S.C. §548, 11 U.S.C. §544(b),)

50. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

51. By granting a Security Interest to himself in the Debtor's assets for an alleged loan to the Debtor that should be recharacterized as a capital contribution to allow the Debtor to operate, Batinovich purported to remove from the reach of the creditors of the estate assets to which the Debtor and its creditors was or should have been entitled, according to proof. Batinovich exercised his control over Debtor in an impermissible manner not available to arms-length creditors, as if the assets were his personal assets, not in good faith, attempting to obtain simultaneously the benefits of equity along with protection against loss of a creditor claim and a lien against Debtor's assets.

52. By transferring all of the assets of the Debtor to another purported company, owned by himself, in return for no true consideration or consideration of no practical benefit, Batinovich committed actual fraud on all creditors of the Debtor, including but not limited to OSE, OORP and its unpaid professionals.

53. Plaintiff is informed and believes and based thereon alleges that during the three years prior to the filing of the petition commencing the Case, and during the one year prior to the

filing of the petition commencing the Case, assets to which the Debtor was or should have been entitled, according to proof, were diverted by transfers and other mechanisms to the benefit of the Defendants with the intention of defrauding one or more creditors of the Debtor the claim of which existed before the transfers, and continues unpaid in the Case.

54. Plaintiff is informed and believes and based thereon alleges that the transfers made, obligations incurred, and other mechanisms of depriving the Debtor of property as may be established pursuant to the allegations above were made with the actual intent to hinder, delay, or defraud entities to which the Debtor was or became indebted, on or after the date of the transfers, and/or were incurred while the Debtor was insolvent; or the Debtor became insolvent as a result; or the Debtor was engaged, or about to engage in a business or transaction, for which any property remaining with the Debtor was an unreasonably small capital in relation to the business or transaction; or the Debtor intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured.

55. Plaintiff is informed and believes and based thereon alleges that any transfer included within the above is not supported by fair and adequate consideration in good faith.

WHEREFORE Plaintiff requests relief as set forth below.

**FIFTH CLAIM FOR RELIEF**
**(Substantive Consolidation)**

56. Plaintiff incorporates by reference each and every allegation set forth in all of the Paragraphs above, as though fully set forth herein.

57. Defendant Victor Batinovich dominated the financial affairs of the Debtor and i2a, disregarded corporate formalities and formalities imposed on limited liability corporations and comingled assets of the Debtor with his own assets and those of other business entities.

58. In order to benefit himself and i2a, Batinovich misappropriated the Debtor's assets and transferred them to i2a and to himself in order to remove the assets from the reach of the creditors of the Debtor. Batinovich concealed the misappropriated assets from the Court, the Trustee and creditors by filing false pleadings, giving false testimony under penalty of perjury and by engaging in other improper conduct.

59. Plaintiff alleges that the financial affairs of the Debtor are so entangled with the financial affairs of Defendants Victor Batinovich and i2a that separation is not achievable on a practical basis, and substantive consolidation is an appropriate remedy in the circumstances.

60. Plaintiff alleges that all Defendants used the identity and credit of the Debtor as a basis for obtaining credit for themselves.

WHEREFORE Plaintiff requests relief as set forth below

**SIXTH CLAIM FOR RELIEF**
**(Liability for Avoided Transfers 11 U.S.C. §550(a))**

61. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

62. Pursuant to 11 U.S.C. § 550(a), to the extent a transfer is avoided, Plaintiff may recover, for the benefit of the estate, the property or the value of the property from the entity to which the transfer was made or for whose benefit the transfer was made. Even the transfers made to i2a were made for the benefit of Batinovich. Defendants, and each of them, are subject to Plaintiff's recovery rights. Plaintiff preserves any avoided lien for the estate.

63. Plaintiff is entitled to recover from Defendants, and each of them, jointly and severally, each and every transfer identified above, and to the extent not constituting a duplicate recovery, all of the value of assets of the Debtor that existed as of the filing of the Chapter 11 petition herein, including but not limited to any and all cash, any and all accounts receivable already owed to Debtor, and any and all accounts receivable which the Debtor was entitled to earn in periods prior to and during the Case.

WHEREFORE Plaintiff requests relief as set forth below.

**SEVENTH CLAIM FOR RELIEF**
**(Conversion)**

64. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

65. As alleged in paragraphs 1 through 28 above, Defendants have wrongfully exercised dominion over the money, personal property, equipment, trade secrets and other property of the Debtor.

66. The Defendants have wrongfully converted the money, personal property, equipment, trade secrets and other property of the Debtor to their own benefit and for their own benefit.

67. The Debtor has been damaged as a direct and proximate result of the Defendants' conversion, and such conversion has caused the demise of the Debtor. As a result of the Defendants' conversion, the Trustee is entitled to recover damages from the Defendants in an amount to be determined at trial. The conduct of Defendants alleged in this Claim for Relief was oppressive, fraudulent, and malicious pursuant to California Civil Code Section 3294 and related provisions, entitling the Trustee to recover punitive damages in an amount to be determined at the time of trial.

WHEREFORE Plaintiff requests relief as set forth below.

**EIGHTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

68. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

69. As alleged above, Defendants have obtained benefits from the Debtor, including but not limited to money, goods, equipment, trade secrets services and other property of the Debtor, which benefits have a monetary value.

70. It would be unjust for the Defendants to retain such benefits and the monetary value of such benefits at the expense of the Debtor.

71. As a result of the Defendants' unjust enrichment, the Trustee is entitled to recover from Defendants the monetary value of any and all benefits unjustly obtained from the Debtor according to proof at trial..

WHEREFORE Plaintiff requests relief as set forth below.

**NINTH CLAIM FOR RELIEF**
**(Alter Ego Against Both Defendants)**

72. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

73. As alleged above, i2a and Integrated Packaging Assembly, Inc. were mere shells

and sham without sufficient capital or assets in comparison to the business it conducted and the risk of loss associated therewith. i2a and the Debtor were conceived, intended, and used by Batinovich as a device to attempt to avoid individual liability and for the purpose of substituting a financially insolvent corporation in the place of himself.

74. Batinovice is, and at all times herein was, the alter ego of i2a and the Debtor., and there exists, and at all times herein mentioned has existed, a unity of interest and ownership between i2a, the Debtor and Batinovich, and each of them, such that any separateness has ceased to exist, in that *inter alia*, Batinovich, the Debtor and i2a have at all times herein mentioned controlled, dominated, managed and operated the Debtor and i2a, and each of them, and in doing so have intermingled the assets of the Debtor with the Defendants, and each of them, to suit the convenience of the Defendants, in order to evade payment of the obligations the Debtor owes to creditors, including, but not limited to, Plaintiff.

75. Adherence to the fiction of the separate existence of the Debtor as an entity distinct from the Defendants, and each of them, would permit an abuse of the corporate privilege, would be inequitable and would promote injustice.

76. As a direct and foreseeable result of the acts and omissions of the Defendants resulting in their becoming the alter ego of the Debtor, the Defendants, and each of them, are liable to Plaintff for the amount of the unsatisfied Judgment and post judgment interest accumulating thereupon that remains unsatisfied, which is an implied contractual obligation, as well as Plaintiff's attorneys' fees and costs to be established.

WHEREFORE Plaintiff requests relief as set forth below.

### TENTH CLAIM FOR RELIEF
(Objection to Claim if Any 11 U.S.C. § 502(d), Subordination 11 U.S.C. §510(c))

77. Plaintiff incorporates by reference each and every allegation set forth above, as though fully set forth herein.

78. Defendants or one or more of them may file a Proof of Claim or other request asserting entitlement to payment from the estate, whether secured or unsecured, prepetition or administrative.

79. Pursuant to 11 U.S.C. § 502(d), to the extent a transfer is avoided under any applicable provision including State law or Federal Law, the Court shall disallow any claim of any entity from which property is recoverable unless such entity has turned over such property.

80. Pursuant to 11 U.S.C. §510(c) the bad acts of Defendants, and each of them, require subordination of any such claim to the claims of each and every arms-length creditor of the estate.

WHEREFORE Plaintiff requests relief as set forth below.

## ELEVENTH CLAIM FOR RELIEF
### (Sanctions Including Legal Expense 11 U.S.C. §105(a))

81. Plaintiff incorporates by reference each and every allegation set forth in all of the Paragraphs above, as though fully set forth herein.

82. The actions of Defendants, and each of them, are continuing, and constituted and continue to constitute abuse of the process of this Court and contempt of court

83. The Debtor-in-Possession and the Trustee incurred costs and expenses, including attorneys fees, first in undertaking the legal procedures required in a Chapter 11 case, and then during the Chapter 7 period of the Case, for the Trustee to investigate the acts, conduct and property of the Debtor and the conduct of the Chapter 11 period of the Case, and to redress the wrongs committed by Defendants including but not limited to recovering unlawful postpetition transfers from the recipients thereof.

84. Plaintiff is informed and believes and thereupon alleges that attorneys for the Debtor have been paid retainers from the property of the Debtor.

85. The Trustee has incurred and continues to incur such costs and expenses, including attorneys fees, according to proof.

86. Upon information and belief, because of the wrongful conduct of the Defendants there have been incurred the quarterly fees of the United States Trustee during the abusive Chapter 11 period of the Case.

WHEREFORE Plaintiff requests relief as set forth below.

//

**PRAYER**

Plaintiff prays for judgment against Defendants, and each of them, as follows:

1. For judgment against the Defendants named above, and each of them, in the amount of transfers of assets from Debtor, losses of compensation and profits to which Debtor should have been entitled, losses of returns on investments to which Debtor should have been entitled, damages for mismanagement and waste, and other recoveries as alleged above, in the sum of not less than $10,000,000 or a greater sum according to proof;

2. For judgment against Defendants, jointly and severally, for recovery of the costs and expenses of the bankruptcy Case, including the costs and expenses of this litigation, and including without limitation the legal expense of the Debtor-in-Possession and of the Trustee, and United States Trustee fees, according to proof;

3. For punitive or exemplary damages, according to proof;

4. For judgment consolidating the assets and liabilities of the Defendants with the assets and liabilities of the Debtor in this bankruptcy case under 11 U.S.C. §105;

5. For judgment against each Defendant disallowing any and all of their respective claims in the estate until and unless such Defendant has returned the avoidable transfer(s); and subordinating any and all such claims;

6. For interest at 10 % from the date of each transfer recovered from such Defendant, and costs of suit; and

7. For such other and further relief as the Court deems just and proper, including such sanctions that will deter the wrongful behavior of Defendants in connection with the Case and this Adversary Proceeding.

DATED: This 9th day of December, 2008.

STROMSHEIM & ASSOCIATES


/s/ *Reidun Strømsheim*
Attorneys for Plaintiff,
CAROL W. WU, Trustee