Initial Debtor Interview
Integrated Packaging Assembly Corp (IPAC)
07-53563
Petition date: October 31, 2007
IDI date: January 8, 2008

Attendees:
   Victor Batinovich, President, 100% owner of IPAC (formerly he owned about 75% and PTA (Polar Twin Advance) owned about 18%
   Bill Healy, debtor's counsel
   Karen Muir, UST bankruptcy analyst

Note: Debtor had not filed SOFA, application to employ counsel or application for responsible individual. Although Victor and i2a (see below for a discussion regarding i2a) had paid a retainer, an attorney fee agreement had not been signed.

Facts that were not expected:[1] IPAC "sold" its business to i2a at the beginning of 2006. However, there does not appear to be a written sales agreement. Victor is the 100% owner of i2a. This is how the transaction was described: i2a transferred some proprietary knowledge to PTA in exchange for PTA cancelling the $750,000 debt owed from IPAC and PTA no longer holding an ownership interest in IPA. The transfer of proprietary knowledge was in effect i2a's payment for IPAC's assets and carry forward losses.

Hence, IPAC's only assets are the litigation actions described on Schedule B. Note the debtor also lists $48,000 paid to Murray & Murray post-petition. These funds are held, awaiting resolution of potential landlord claims and potential offsets.

The debtor does not have any patents, machinery or inventory, even though they are listed on Schedule B as unknown. i2a owns all of these assets formerly owned by IPAC. Also, the debtor correctly reports $0 for accounts receivable. It is actually i2a which assembles and tests semiconductor chips and i2a (not the debtor) which employs 55 individuals.

i2a "in effect" subleased property that was leased by debtor. Apparently, there is not a written sublease agreement. After the filing date, i2a has moved to a new location, entering into a lease under the i2a name.

Background: Debtor's business began in 2003 when it purchased assets from OSE. As described above, IPAC was sold to i2a in 2006. About September 2003, the debtor into a lease of 2221 Old Oakland Road, San Jose with Joseph Sully. The next owner of the property was Canada Life. About October 2006, Old Oakland Road Associates (OORA) purchased the 2221 Old Oakland Road, subject to debtor's lease. Shortly after OORA's purchase of 2221 Oakland Road, debtor initiated state court litigation, in great part, to address the deplorable condition of the premises,

---

[1] Not expected because motions filed by the debtor discussed employees and business operations which in fact were the employees and business operations of i2a.

OORA's refusal and failure to maintain and repair the premises and improperly demanded excessive rent. In response, to debtor's complaint and state court litigation, OORA initiated formal efforts to evict debtor (in effect, evicting i2a). After months of litigation, debtor and OORA entered into negotiations to resolve these issues. In July 2007, a Memorandum of Settlement was executed whereby debtor would dismiss its state action, the debtor would agree to entry of a judgment for possession of premises, and debtor would occupy the premises through October 31, 2007.

About August 2007, **i2a** signed a lease for a new facility in Fremont and **i2a** hired its own contractors to ready the Fremont facility for occupancy, but it would not be ready for occupancy by the end of October.

Reason for filing bankruptcy: Debtor's counsel attempted to explain debtor's situation to OORA, but OORA was inflexible. On October 31, debtor filed an emergency voluntary petition.

Events that occurred post-petition:
On November 1, the Santa Clara County Sheriff and OORA, notwithstanding the notice of the bankruptcy filing, proceeded to enforce the judgment by demanding i2a's employees, under threat of arrest, to stop working and leave the premises. i2a's employees were in production and not allowed to stop production in proper form and power down the equipment. i2a has not yet determined the resulting damage caused by OORA and the Santa Clara County Sheriff's November 1, 2007 actions. Debtor (hence, i2a) was subsequently allowed back into the premise by OORA.

After debtor's bankruptcy filing, OORA filed a motion for relief from stay and for surrender of the premises seeking the court's permission to evict debtor. On November 9, the debtor and OORA reached an agreement whereby debtor, upon certain conditions, was allowed to continue to occupy the premised until December 10. On November 26, the Court entered a relief from stay order, which required, among other things, that the debtor deposit $64,000 in administrative rent funds in exchange for being allowed to remain in the premises located at 2221 Old Oakland Road through December 10.

The debtor (in effect, i2a) has vacated the premises and i2a is now located at 3399 West Warren Avenue in Fremont.

The debtor has refused to release the $64,000 to Murray & Murray and contends it may have various offsets, including damages for the improper post-petition shut down of equipment[2], excess lease charges[3] and excess utility charges (the debtor contends it may have been charged for utilities for a portion of the premises occupied by another tenant).

Plan for reorganization: Debtor has not sought dismissal of the case, because Healy believes that

---

[2] The debtor has not yet quantified the financial impact to i2a from the violation of the stay.

[3] The debtor asserts that it had an agreement with former landlord, Canada Life, to reduce the monthly lease to $32,000 because of all the serious problems with the building, but the monthly rent was not honored by OORA when it acquired the property. Although the reduction to $32,000 was not in writing, the debtor had paid the $32,000 to the prior landlord for years.

the lawsuits will be quicker, cheaper, and easier to resolve in bankruptcy. Hence, the plan is to prosecute and resolve lawsuits. Also, there may be offsets to the $64,000 administrative rent claim, as discussed above.

I have requested a copy of the following litigation listed on *Schedule B: OSE USA, Inc. v. IPAC, et al and cross complaint*. Victor previously owned a Delaware corporation named IPAC. That IPAC was sold to OSE in 1997. Victor purchased the business from OSE in 2003 and formed a California corporation with the name of IPAC (the current IPAC is a California corporation). OSE previously leased the Old Oakland premises from Sully. IPAC purchased OSE for $1 million - paying $500,000 in cash and $500,000 due via a note payable. The $500,000 Promissory Note is dated September _ 2006. It states that IPAC makes a secured promissory note to OSE USA, but I don't think the 2006 date makes sense.

Apparently, the intent was to secure the note by a deed of trust against Victor's property (i.e., Victor's property as an individual). I pointed out that it is poorly written since it states that the note is "secured by borrower's real property located at 1200 Arthur Court, Los Alto, California." But the borrower is IPAC, not Victor. Apparently, OSE and Sully are asserting ownership in the note payable (because OSE has a debt to Sully?). However, Victor stated that debtor hired Thelan Reid and an agreement was reached between IPAC and OSE to cancel the note (because they each had claims against each other that resulted in a breakeven position). The facts regarding the current status of the lawsuit are somewhat confusing. At the 341, please have the debtor briefly explain the lawsuit and its current status.

The other litigation - *IPAC v. Canada Life Assurances, et al* - was included as Exhibit D to docket item 7. It states, among other things, that to induce plaintiff (i.e., debtor) to enter into a lease for the premises, Joseph Sully represented that he would make required improvements to the premises. Sully did not address all the deficiencies. In recognition of Sully's failure to make the repairs, Sully agreed to accept a reduction in rent - to $32,000 per month. Canada Life assumed possession and control of the premises, but did not make the required improvements. By November 2005, plaintiff entered into discussions to lease space at a different location. Upon learning of debtor's intent to terminate the lease, Canada Life entered into negotiations with plaintiff for a new lease. Canada Life agreed to the $32,000 per month, the amount that had been paid since the outset of its occupation, and Canada Life agreed to the required repairs. Nonetheless, Canada Life delayed providing the final agreement. Finally, in June 2006, Canada Life sent the revised agreement and gave plaintiff 7 days to sign and return it. Victor was out of the country and could not meet the deadline. When he returned, he signed it, but Canada Life refused to enter into the agreement, under the pretext that it had not been signed within 7 days. Canada Life informed plaintiff that it was bound to the original lease amount even though it had always accepted $32,000 per month and had never repaired the premises. Canada Life sold the building to OORA. OORA was aware of the history of the property and had interviewed the plaintiff and inspected the premises prior to the purchase. After assuming possession and control of the premises, OORA, served upon plaintiff a 3 day notice to pay rent and additional rent or quit. Consequently, the debtor sued for breach of contract, breach of duty of good faith and fair dealing, unfair business practices, etc. The plaintiff requests, among other things, compensatory damages against Canada Life and OORA, and issuance of a preliminary and permanent

injunction from Canada Life and OORA collecting any rent in excess of $32,000.

Other matters:

*Regarding Schedule D:* Victor stated that IPAC has never owed anything to Bridge Bank or I.C.O.S. Vision Systems. Apparently, a public records showed a financing agreements with these companies and a company identified as IPAC. Healy included them on Schedule D in an abundance of caution.

Victor stated that the $500,000 owed to him (and reported on Schedule D) for "advancing working capital" has been recorded with the Secretary of State.

Items outstanding:
1. Copy of lawsuits - OSE sued debtor for payment of note payable and debtor countersued (listed on Schedule B as OSE USA, Inc. v IPAC, et al and cross complaint).
2. "Sales agreement" between IPAC and i2a
3. Amend Schedule H (OSE note)
4. File Statement of Financial Affairs
5. Amend Schedule B to show $0s instead of unknown
6. Attorney fee agreement
7. Application for employment
8. Application for responsible individual
9. Tax return for 2005