1  GOLDBERG, STINNETT, DAVIS & LINCHEY
   A Professional Corporation
2  DENNIS D. DAVIS, ESQ. CA Bar #070591
   KATHERINE D. RAY, ESQ. CA Bar #121002
3  44 Montgomery Street, Suite 2900
   San Francisco, CA  94104
4  Telephone: (415) 362-5045
   Facsimile:  (415) 362-2392
5
   Attorneys for Defendants
6  i2a Technologies and Victor A. Batinovich

7

8               IN THE UNITED STATES BANKRUPTCY COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                       SAN JOSE DIVISION

11

12  In re:                          Case No. 07-53563-ASW

13  INTEGRATED PACKAGING            Chapter 7
    ASSEMBLY CORP.,
14
              Debtor.
15

16  _____

17  CAROL W. WU, Trustee,           A.P. No. 08-5333

              Plaintiff,
18
    vs.                             **Date:     July 16, 2010**
19                                  **Time:     3:00 p.m.**
    i2a TECHNOLOGIES and VICTOR A.  **Place:    Courtroom 3020**
20  BATINOVICH,                     **          280 South First Street**
                                    **          San Jose, CA**
21            Defendants.           **Judge:    Hon. Arthur S. Weissbrodt**

22  _____

23        **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**
          **OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
24

25

26

27

28

<div style="margin-left:left-sidebar">
LAW OFFICES
**GOLDBERG, STINNETT, DAVIS & LINCHEY**
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104
</div>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.  INTRODUCTION ................................................................................................1

II. ARGUMENT ........................................................................................................2

    A.  Standard For Summary Judgment ...........................................................2

    B.  Defendants Are Entitled to Partial Summary Judgment on the Second and Third Claims for Relief ....................................................................4

        1.  Trustee Lacks Standing to Prosecute Bankruptcy Crimes ...........4

        2.  Trustee Lacks Standing to Recover Damages under Section 362(h) ............................................................................................4

        3.  Trustee is Not Entitled to Civil Contempt Sanctions for Violation of the Stay ...................................................................5

    C.  Defendants Are Entitled To Summary Judgment On The Fourth Claim Because The Trustee Has No Evidence To Establish Batinovich Is The Alter Ego Of The Debtor And i2a...........................................................9

    D.  Defendants Are Entitled to Summary Judgment on the Third and Eighth Claims for Relief Because the Defendants Did Not Abuse the Bankruptcy Process ...................................................................................11

    E.  Defendants Are Entitled to Summary Judgment on the Fifth Claim for Relief Because the Trustee Cannot Make the Required Showing for Substantive Consolidation of Nondebtor Defendants with the Debtor ....................................12

    F.  Defendants Are Entitled to Summary Judgment on the Seventh Claim for Relief for Disallowance and/or Subordination of Any Claim by Defendants .......15

III. CONCLUSION....................................................................................................16

LAW OFFICES

GOLDBERG, STINNETT, DAVIS & LINCHEY

A PROFESSIONAL CORPORATION

44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

# TABLE OF AUTHORITIES

## CASES

**Cases**

_Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986)................2, 3

_Associated Vendors, Inc. v. Oakland Meat Co._, 210 Cal.App.2d 825 (1962) ....................10

_Bonham v. Compton (In re Raejean Bonham)_, 22 F.3d 750 (9th Cir. 2000)................13, 14, 15

_Celotex Corp. v. Catrett_, 477 U.S. 317, 106 S.Ct. 2548 (1986). ....................................2, 3

_Clayman v. Starwood Hotels & Resorts Worldwide_, 343 F.Supp.2d 1037 (D. Kansas 2004) ..............7

_Decker v. Antovich (In re Antovich Construction, Inc.)_, 2006 WL 3834302 (Bkrtcy.N.D.Cal.) .....9, 10

_Enterprise Acquisition Partners, Inc._, 319 B.R. 626 (9th Cir. BAP 2004) ............................9

_F. J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc._, 244 F.3d 1128 (9th Cir. 2001).....................5

_Falstaff Brewing Corp. v. Miller Brewing Co._, 702 F.2d 770 (9th Cir. 1983) ........................5

_Glassey v. Amano Corporation, et al._, 2006 WL 889519 (N.D.Cal.)....................................4

_In re Applied Theory Corp._ 493 F.3d 82 (2d Cir. 2007)....................................15

_In re Auto-Train Corp., Inc._, 810 F.2d 270 (D.C. Cir. 1987) ............................14

_In re Bennett_, 298 F.3d 1059 (9th Cir. 2002)....................................5

_In re Bonham_, 226 B.R. 56 (Bkrtcy. D. Alaska 1998)....................................13

_In re Count Liberty LLC_, 370 B.R. 259 (Bkrtcy. C.D. Cal. 2007) ....................5

_In re Del Mission_, 98 F.3d 1147 (9th Cir. 1996) ....................................5

_In re Dyer_, 322 F.3d 1178, 1190 (9th Cir. 2003)....................................5, 6, 8

_In re Folks_, 211 B.R. 378....................................9

_In re Hardy_, 97 F.3d 1384 (11th Cir. 1996)....................................5

_In re Pace_, 67 F.3d 187, 192 (9th Cir. 1995)....................................5

_In re Rainbow Magazine_, 77 F.3d 278 (9th Cir. 1996)....................................11

_In re Si Yeon Park, Ltd._ 198 B.R. 959 (Bkrtcy. C.D. Cal. 1996)....................................5

_In re Universal Farming Industries_, 873 F.2d 1334 (9th Cir. 1989)....................................15

LAW OFFICES

**GOLDBERG, STINNETT, DAVIS & LINCHEY**

A PROFESSIONAL CORPORATION

44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

ii

_Las Palmas Associates v. Las Palmas Center Associates_, 235 Cal.App.3d 1220 (1991) ................10

_Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp._, 475 U.S. 564, 106 S.Ct. 1348 (1986) ..........2

_Matter of Fabricators, Inc._, 926 F.2d 1458 (5th Cir. 1991) ................16

_Matter of Herby's Foods, Inc._, 2 F.3d 128 (5th Cir. 1993) ................15

_Mesler v. Bragg Management Co._, 39 Cal.3d 290 (1985) ................9

_Mid-Century Ins. Co. v. Gardner_, 9 Cal.App.4th 1205 (1992) ................11

_MSR Exploration, Ltd._, 74 F.3d 910 (9th Cir. 1996) ................11, 12

_Ngoc Tran v. Farmers Group, Inc.,_ 104 Cal.App.4th 1202 (1st Dist.2002)................9, 10

_Oliner v. Kontrabecki_, 305 B.R. 510 (N.D. Cal. 2004), _appeal dism'd_ 158 Fed. Appx. 1, 2005 WL 3046363 (9th Cir. 2005)................5

_Orr v. Bank of Am._, 285 F.3d 764, 773 (9th Cir. 2002) ................3

_Slottow v. American Casualty Co. of Reading, Pa,_ 10 F.3d 1355 (9th Cir. 1993) ................9

_Spallone v. U.S._, 110 S.Ct. 625 (1990) ................5

_Triton Energy Corp. v. Square D Co._, 68 F.3d 1216, 1220 (9th Cir. 1995). ................3

Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.), 860 F.2d 515 (2nd Cir. 1988) ................13

## STATUTES

**Statutes**

11 U.S.C. § 105(a) ................5, 6, 11

11 U.S.C. §105(c) ................5

18 U.S.C. § 152 ................4

18 U.S.C. § 158 ................4

Bankruptcy Code Section 362(h) ................4, 5

Bankruptcy Code Section 510(c) ................15

Bankruptcy Code Section 1112 ................12

Fed. R. Civ. Proc. 37(c)(1) ................7

Fed. R. Civ. Proc. 56(d)(1) ................4

iii

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

Fed. R. Civ. P. 56(e) ......................................................................................2, 3, 4

Federal Rules of Bankruptcy Procedure, Rule 7056 ..............................................2

Rule 26(a) ....................................................................................................................7

Rule 26(a)(1) ................................................................................................................7

Rule 56(d) ....................................................................................................................4

<u>OTHER AUTHORITIES</u>

Collier on Bankruptcy ¶105.09[1][b] .............................................................. 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

iv

## I. **INTRODUCTION**

This action was brought as a result of misstatements in a declaration executed by the debtor's principal, Victor A. Batinovich ("Batinovich"), on November 7, 2007, one week after the debtor's chapter 11 case commenced on October 31, 2007. The declaration was filed in opposition to an expedited motion for relief from stay brought by the debtor's landlord. In the declaration, Batinovich misstated that it was the debtor, Integrated Packaging Assembly Corp. ("IPAC" or "Debtor"), that was operating the technology business at the leased premises, rather than defendant i2a Technologies ("i2a"). i2a had purchased most of the Debtor's assets in a documented, prepetition sale in January 2006, approximately 22 months prior to the Debtor's bankruptcy filing.

The Debtor timely filed its Schedules later that month, on November 29, 2007, from which it was obvious that the Debtor was not operating and that the November 7, 2007 Batinovich declaration was in error. The Schedules showed that the Debtor's assets consisted almost entirely of $500,000 in litigation claims and a security deposit held by the landlord's counsel. The Schedules reflected that the Debtor had no cash, accounts receivable, customer lists or office equipment.

In addition, on January 8, 2008, the U.S. Trustee conducted its Initial Debtor Interview ("IDI") at which Batinovich apprised the U.S. Trustee of the Debtor's 2006 asset sale to i2a, describing in detail its terms, consideration paid, and how the acquisition came about. On January 24, 2008, the Debtor provided a copy of the 2006 Asset Purchase Agreement between the Debtor and i2a to the U.S. Trustee. On January 25, 2008, the Debtor filed its first operating report, Statement of Financial Affairs ("Statement"), and amended Schedules, each of which again underscored the fact that the Debtor was not operating i2a's business. Consistent with its Schedules, the Debtor's balance sheet showed no cash, accounts receivable, inventory, property, office equipment or machinery, and its statement of operations showed no receipts or disbursements. The Statement of Financial Affairs showed no income from operations. The amended Schedules corrected the value of machinery, equipment, inventory and intellectual property, which had previously been listed as "unknown", to zero.

Notwithstanding these undisputed facts, plaintiff Carol W. Wu, Trustee ("Trustee") of the Debtor's chapter 7 estate, contends that Batinovich and i2a misled the Court "for months." By the

Case: 08-05333   Doc# 22-1   Filed: 06/08/10   Entered: 06/08/10 14:33:31   Page 6 of 22

LAW OFFICES
**GOLDBERG, STINNETT, DAVIS & LINCHEY**
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

Complaint, the Trustee asks this Court to invalidate the prepetition sale of the Debtor's assets to i2a as either a sham or unauthorized postpetition transfer made in violation of the stay, to declare IPAC and i2a as the alter egos of Batinovich, to substantively consolidate the assets and liabilities of the nondebtor defendants with IPAC's bankruptcy estate, and to award the Trustee "damages" in the amount of $10 million.

Defendants Batinovich and i2a hereby move for partial summary judgment in their favor on the third, fifth, seventh and eighth claims for relief, on the grounds that there are no material facts in dispute that:

- the Trustee cannot make the required showing that IPAC and i2a should be declared the alter egos of Batinovich;

- the Trustee cannot make the required showing for the extraordinary remedy of substantive consolidation;

- the Trustee is not entitled to any damages on any ground other than the transfer avoidance claims.

## II.    ARGUMENT

### A.    Standard For Summary Judgment

Rule 7056 of the Federal Rules of Bankruptcy Procedure, authorizes summary judgment upon a showing that there is no genuine issue of material fact as to a particular claim or defense, and that the moving party is entitled to a judgment as a matter of law with respect to that claim or defense. Fed. R. Bankr. Proc. 56(a), (b) and (c).  See, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 564, 106 S.Ct. 1348 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986).

The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323.  If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. FRCP 56(e); *Celotex*, supra, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, *supra*, 475

LAW OFFICES
**GOLDBERG, STINNETT, DAVIS & LINCHEY**
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA  94104

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

U.S. at 586-87.  The Supreme Court considered the situation where the defendant was unable to produce evidence to prove a negative.  The Court held that the defendant's motion for summary judgment was properly granted against the plaintiff who, after adequate opportunity for discovery, was unable to produce any evidence of an essential element to her claim.  Under that circumstance, the defendant movant's burden of showing that no factual issue existed shifted to the plaintiff nonmovant to show affirmative evidence establishing the essential elements of the claim.

> [A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing of an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 322.

An issue of fact is "material" if, under the substantive law of the case, resolution of the factual dispute might affect the outcome of the case.  See *Anderson v. Liberty Lobby, Inc.*, *supra*, 277 U.S. at 248.  Factual disputes are genuine if they "properly can be resolved in favor of either party."  *Id.* at 250.  Thus, a genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor.  *Id.*; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1220 (9th Cir. 1995).

Although reasonable inferences must be drawn in the nonmoving party's favor, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor. . . . The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp.*, *supra*, 68 F.3d at 1221.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Anderson v. Liberty Lobby, Inc.*, *supra*, 277 U.S. at 249-50 (internal citations omitted).  Only admissible evidence may be considered in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(e); *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002).

*Rule* 56(e) provides:

///

When a motion for summary judgment is made and supported as provided in this rule, an **adverse party may not rest upon mere allegations or denials** of the adverse party's pleading, but the adverse party's response, by affidavits or otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate shall be entered against the adverse party.

Fed. R. Civ. Proc. 56(e), emphasis supplied.

Rule 56(d) further provides that if summary judgment is not rendered on the whole action, "the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. Proc. 56(d)(1). Thus, to the extent the Court denies summary judgment in favor Defendants, Defendants seek a summary adjudication of the facts, including items of damages or other relief, that are not genuinely at issue, in order to narrow the issues for trial.

## B. Defendants Are Entitled to Partial Summary Judgment on the Second and Third Claims for Relief

### 1. Trustee Lacks Standing to Prosecute Bankruptcy Crimes

In her Second Claim for Relief, the Trustee cites 18 U.S.C. § 152 but does not state what relief the Trustee is seeking under that statute. Title 18 of the U.S. Code covers "Crimes and Criminal Procedure." 18 U.S.C. § 152 makes it a crime, punishable by fine or up to 5 years in prison, for certain conduct in a bankruptcy case, including fraudulently concealing assets or making false oaths therein. The Trustee lacks standing to pursue any relief under 18 U.S.C. § 152. 18 U.S.C. § 158; _Glassey v. Amano Corporation, et al._, 2006 WL 889519 (N.D.Cal.) (private party lacked standing to enforce 18 U.S.C. § 152 because Congress specifically gave responsibility for enforcing that statute to the U.S. Attorneys and the FBI, pursuant to 18 U.S.C. § 158). Thus, as a matter of law, the Trustee is not entitled to any relief against Defendants under 18 U.S.C. § 152.

### 2. Trustee Lacks Standing to Recover Damages under Section 362(h)

Bankruptcy Code Section 362(h) provides a private right of action for a stay violation ("An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive

LAW OFFICES
**GOLDBERG, STINNETT, DAVIS & LINCHEY**
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

damages.") A trustee is not "an individual" but the representative of the bankruptcy estate and therefore is ineligible to recover damages under the private cause of action set forth in Section 362(h). *In re Dyer*, 322 F.3d 1178, 1190 (9th Cir. 2003); *In re Pace*, 67 F.3d 187, 192 (9th Cir. 1995).

### 3. Trustee is Not Entitled to Civil Contempt Sanctions for Violation of the Stay

Although a trustee is not entitled to damages under Bankruptcy Code Section 362(h), a trustee may recover damages for a stay violation under Section 105(a) as a sanction for ordinary civil contempt. *Dyer*, at 1191; *Pace*, at 193; *In re Del Mission*, 98 F.3d 1147, 1152 (9th Cir. 1996). The bankruptcy court's contempt power is available in core proceedings. 11 U.S.C. §105(c); *In re Si Yeon Park, Ltd.* 198 B.R. 959 (Bkrtcy. C.D. Cal. 1996) (Section 105(a) powers limited by Section 105(c) to those authorized under 28 U.S.C. §§ 157 and 1334).

In contrast to civil contempt sanctions, criminal contempt sanctions are not available under Section 105(a). *Dyer*, at 1192; *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002). A key distinction between civil and criminal contempt is that the contemnor have the ability to comply with the order. Thus, even a small fine could be a criminal contempt sanction "if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance," in which case the fine would not be compensatory. *Dyer* at 1993.

Civil contempt sanctions must be wholly remedial and serve to coerce an individual into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance. *Dyer*, at 1192; *F. J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1137-38 (9th Cir. 2001); *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983); *Oliner v. Kontrabecki*, 305 B.R. 510, 520 (N.D. Cal. 2004), *appeal dism'd* 158 Fed. Appx. 1, 2005 WL 3046363 (9th Cir. 2005); *In re Count Liberty LLC*, 370 B.R. 259, 274 (Bkrtcy. C.D. Cal. 2007). The test to determine whether a sanction for contempt is coercive and not punitive has been said to be "(1) whether the award directly serves the complainant rather than the public interest, and (2) whether the contemner may control the extent of the award." *In re Hardy*, 97 F.3d 1384, 1390 (11th Cir. 1996). In imposing sanctions for contempt, a court must use the "least possible power adequate to the end proposed." *Spallone v. U.S.*, 110 S.Ct. 625, 627 (1990).

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

In addition to its civil contempt power, bankruptcy courts also have the inherent authority under Section 105(a) to vindicate its own orders. However, sanctions under the court's inherent sanction authority requires an explicit finding of bad faith or willful misconduct. <u>Dyer</u>, at 1996.

> The inherent sanction authority differs from the civil contempt authority in an additional respect as well. Before imposing sanctions under its inherent sanctioning authority, a **court must make an explicit finding of bad faith or willful misconduct**. In this context, "willful misconduct" carries a different meaning than the meaning employed in the context of determining whether an individual is entitled to damages under § 362(h) or a contempt judgment under § 105(a) for an automatic stay violation. With regard to the inherent sanction authority, bad faith or willful misconduct consists of something more egregious than mere negligence or recklessness. **Although "specific intent to violate the automatic stay" may not be required in the contempt context, such specific intent or other conduct in "bad faith or conduct tantamount to bad faith," is necessary to impose sanctions under the bankruptcy court's inherent power.**

322 F.3d at 1996 (citations omitted; emphasis supplied).

In addition to the fact that the Defendants have not violated the stay, the Trustee is not entitled to any damages on the Second Claim for Relief as a matter of law for the following reasons.

### (1) Any Civil Contempt Award Would Be Punitive As There Is No Compliance to be Made

First, the Trustee contends that Defendants violated the stay by completing the transfer of assets to i2a on an unspecified post-petition date. Since the sale occurred in 2006, almost two years prior to the Debtor's bankruptcy filing, and i2a took possession of the purchased assets at that time, there was no stay in effect. There is no order which the Defendants have failed to comply with, for which civil contempt sanctions would coerce their compliance. Any civil contempt sanctions would therefore be punitive in nature and unauthorized under Bankruptcy Code Section 105(a).

///
///
///
///

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
LAW OFFICES
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

**(2)** **Any Sanction Under the Court's Inherent Authority Requires a Finding of Bad Faith or Willful Misconduct, Neither of Which is Appropriate Here**

Second, while the November 7, 2007 Batinovich declaration may have been negligent or reckless, it falls far short of bad faith or willful misconduct. The declaration was made at the outset of the case under exigent circumstances. Accurate information regarding the Debtor's status was set forth shortly thereafter in the Schedules filed on November 29, 2007, at the January 8, 2008 IDI, at the January 16, 2008 meeting of creditors, and in the amended schedules, Statement and operating report filed on January 25, 2008.

**(3)** **The Trustee Has Failed to Disclose Any Damage Calculations**

Third, in her Rule 26 Disclosures, the Trustee failed to set forth her calculation of damages, claiming that such damage calculations are "Not applicable disclosures for a plaintiff in this kind of action." See, Initial Disclosures of Plaintiff dated April 7, 2010, a copy of which is attached to the Davis Declaration as Exhibit "A."

Federal Rule of Procedure 26(a)(1) requires that a party must disclose its computation of damages without waiting for a discovery request. _See_, _Clayman v. Starwood Hotels & Resorts Worldwide_, 343 F.Supp.2d 1037 (D. Kansas 2004) (rejecting argument that failure to disclose damage computations as required by Rule 26(c)(1) is harmless because other side could have discovered damages through deposition). Sanctions for failure to abide by Rule 26(a)(1) are set out in Fed. R. Civ. Proc. 37(c)(1), which provides, in part "[a] party that without substantial justification fails to disclose information required by Rule 26(a) shall not, unless such failure is harmless, be permitted to use as evidence at a trial . . . any . . . information not so disclosed."

In this case, there is no justification for the Trustee's failure to disclose her damage calculations. The Trustee seeks $10 million in her First Claim for Relief and unspecified damages for alleged bankruptcy abuses. Her failure to disclose her calculation of damages is not harmless, as discovery is closed.

///

### (4) Damages for Stay Violations are Limited to Those Resulting from a Violation of the Stay

Fourth, there are no damages for violation of the stay in this case, as such damages are limited to those resulting from the violation. *See, Dyer, supra*. In *Dyer*, the debtor's former father-in-law recorded a post-petition deed of trust against the debtor's property and the trustee made demand that the deed of trust be reconveyed. When the creditor refused to do so, the trustee sued the creditor for violating the stay and to declare the deed of trust void as an unauthorized postpetition transfer. The trustee also challenged the enforceability of the deed of trust on the grounds the loan was a gift and that the deed of trust was voidable as an unperfected lien. The bankruptcy court found that the creditor violated the stay by recording the deed of trust and awarded the trustee its documented attorneys fees and costs of approximately $151,000, plus $50,000 in punitive damages, and the creditor appealed. The Ninth Circuit ruled that the trustee was only entitled to recover fees relating to the stay violation, which included fees incurred in seeking declaratory relief that the deed of trust was void, but did not include fees for litigating the validity of the underlying debt (loan vs. gift) or in defending against the creditor's claim that the deed of trust was enforceable.

In this case, the Trustee had not even been appointed at the time the stay was allegedly violated by Defendants, as the Debtor was a debtor-in-possession until the conversion of the chapter 11 case in September 2008. Prior to the Trustee's appointment, the only litigation in the Debtor's case regarding the automatic stay was landlord OORA's motion for relief from stay to proceed with its state court remedies in obtaining possession of the leased premises, which motion was initially contested by the Debtor as debtor-in-possession and resolved through stipulation. Neither the estate or the Trustee incurred damages for Defendants' alleged violation of the stay.

For all of the foregoing reasons, the Trustee cannot establish her claim for violation of the stay and resulting damages, and Defendants are therefore entitled to judgment on the Second Claim for Relief.

///

///

///

///

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

Case 08-25583 Doc# 22 Filed: 06/08/10 Entered: 06/08/10 14:33:31 Page 13 of 22

**C. Defendants Are Entitled To Summary Judgment On The Fourth Claim Because The Trustee Has No Evidence To Establish Batinovich Is The Alter Ego Of The Debtor And i2a.**

The alter ego doctrine allows a court, in cases of misuse, to disregard or pierce through the corporate form to hold individual shareholders liable for the actions of the corporation, or to treat two corporations as one. See, _Decker v. Antovich (In re Antovich Construction, Inc.)_, 2006 WL 3834302 (Bkrtcy.N.D.Cal.). A chapter 7 trustee has standing to pursue an alter ego claim against the principal of a corporate debtor. _In re Folks_, 211 B.R. 378, 387-88 (an alter ego claim against the principal of a corporate debtor is property of the corporate debtor's bankruptcy estate insofar as the claim is a general one, with no particularized injury arising from it, which is based upon the injury to the corporate debtor and all its creditors, rather than a personal claim belonging to any individual creditor).

Its purpose is to bypass the corporate entity to avoid injustice. Its "essence … is that justice be done[,] . . . [and t]hus the corporate form will be disregarded **only in narrowly defined circumstances** and **only when the ends of justice so require**." _Mesler v. Bragg Management Co._, 39 Cal.3d 290, 325 (1985). (Emphasis supplied.)

State law controls the circumstances under which it is appropriate to pierce a corporate veil. _Enterprise Acquisition Partners, Inc._, 319 B.R. 626, 624 (9th Cir. BAP 2004). Under California law, there is "no litmus test" to determine when the corporate veil will be pierced; the result will always depend on the circumstances of the particular case. _Mesler_ at 300. In _Mesler_, the California Supreme Court held that two general requirements must be met for the alter ego doctrine to apply: First, there must be such unity of interest or ownership that the separate personalities of the alter ego and the corporation no longer exist. Second, it must be established that adherence to the corporate fiction will sanction a fraud, promote injustice or otherwise create an inequitable result. _Id._; _Slottow v. American Casualty Co. of Reading, Pa,_ 10 F.3d 1355 (9th Cir. 1993). Where two corporations are involved, the corporate form may be disregarded where one corporation is the mere instrumentality, agency, conduit, or adjunct of another corporation, as may occur in a parent-subsidiary relationship. _Ngoc Tran v. Farmers Group, Inc.,_ 104 Cal.App.4th 1202, 1219 (1st Dist.2002). Alter ego liability can also be found between two sister corporations when they are being operated as a single

LAW OFFICES

**GOLDBERG, STINNETT, DAVIS & LINCHEY**

A PROFESSIONAL CORPORATION

44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

enterprise. *Id.; Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal.App.3d 1220, 1249-50 (1991).

There are a number of factors that the courts consider including: commingling of funds or assets; treatment by an individual of corporate assets as his own; failure to obtain authority to issues stock or to subscribe to or issue stock; the failure to maintain corporate formalities; confusion of records between separate entities; ownership of all stock by one individual or the members of a family; use of the same office or business location; use of same employees; failure to adequately capitalize a corporation; the total absence of corporate assets; use of a corporation as a mere shell or conduit for another person or entity; use of a corporation to procure labor, services or merchandise for another person or entity, and the manipulation of assets or liabilities between entities to concentrate the assets in one and the liabilities in another. *Antovich*, p. 3. *See also Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838-40 (1962). (discussing cases supporting these and other factors).

Here, the Trustee produced no evidence of commingling of funds or assets (Davis Declaration ¶ 4). To the contrary, the 2006 asset sale between the Debtor and i2a was fully documented and the $750,000 purchase price paid to the Debtor was consistent with an arms-length transaction. The Debtor had paid $1,000,000 for essentially the same assets when it purchased them from OSE, USA in 2003. The difference properly reflects the Debtor's contention that OSE USA did not fully perform and deliver what it promised and that what assets were delivered had depreciated. There is no evidence that Batinovich treated the corporate assets of the Debtor and/or i2a as his own. To the contrary, Batinovich holds a secured claim against the Debtor for a $500,000 unpaid loan which was perfected by a financing statement in 2005. There is no evidence that the Debtor or i2a failed to obtain authority to issue stock or to issue stock or that corporate formalities were not observed.

The Trustee makes much of the fact that i2a operated at the same location as the Debtor and ended up with some of the same employees. This is not surprising since the Debtor assigned the lease for the Old Oakland Road premises in San Jose to i2a in the sale transaction and sold the assets which enabled it to operate. The Trustee contends that the Debtor had no operating capital while simultaneously alleging that the Debtor paid $1 million to OSE USA to acquire the Debtor's assets,

-10-

LAW OFFICES
**GOLDBERG, STINNETT, DAVIS & LINCHEY**
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

$500,000 of which was paid in cash. Some California courts have cautioned against relying too heavily in isolation on the factors of inadequate capitalization or concentration of ownership and control. *Mid-Century Ins. Co. v. Gardner*, 9 Cal.App.4th 1205, 1213 (1992). Based on the foregoing, the Trustee has no evidence that is such a unity of interest amongst Batinovich, the Debtor and i2a that the corporate existence of the Debtor and i2a should be disregarded.

### D. Defendants Are Entitled to Summary Judgment on the Third and Eighth Claims for Relief Because the Defendants Did Not Abuse the Bankruptcy Process

In her Third Claim for Relief, the Trustee alleges that Batinovich intentionally misled the Court regarding the Debtor's status, including failing to disclose the prepetition asset sale to i2a. In her Eighth Claim for Relief, the Trustee seeks sanctions under Section 105(a), including reimbursement of the Debtor-in-Possession's legal fees during the chapter 11 case and the Trustee's expenses in investigating the Debtor's affairs – things which the Trustee was required to do in any chapter 7 case. The Trustee alleges that Defendants' conduct was an abuse of process which entitles the Trustee to recover her expenses, including attorneys and accountant fees.

Bankruptcy Code Section 105(a) explicitly authorizes the bankruptcy court to issue orders necessary "to prevent an abuse of process." That language has been recognized as giving bankruptcy courts the inherent power to sanction for abuse of process. *In re Rainbow Magazine*, 77 F.3d 278, 284 (9th Cir. 1996). In *MSR Exploration, Ltd.*, 74 F.3d 910 (9th Cir. 1996), the Ninth Circuit held that sanctions for abuse of the bankruptcy process was a matter within the exclusive jurisdiction of the bankruptcy courts and observed that specific remedies which Congress provided for misuses of the bankruptcy process should be viewed as an "implicit rejection" of other penalties:

> Congress did provide a number of remedies designed to preclude the misuse of the bankruptcy process. *See, e.g.,* Fed. Bankr.R. 9011 (frivolous and harassing filings); 11 U.S.C. § 105(a) (authority to prevent abuse of process); 11 U.S.C. § 303(i)(2) (bad faith filing of involuntary petitions); 11 U.S.C. § 362(h) (willful violation of stays); 11 U.S.C. § 707(b) (dismissal for substantial abuse); 11 U.S.C. § 930 (dismissal under Chapter 9); 11 U.S.C. § 1112 (dismissal under Chapter 11). That, too, suggests that Congress has considered the need to deter misuse of the process and has not merely overlooked the creation of additional deterrents.
>
> . . . .

Case 08-05393 Doc# 22 Filed: 06/08/10 Entered: 06/08/10 14:33:31 Page 16 of 22

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

Congress' authorization of certain sanctions for the filing of frivolous bankruptcy petitions **should be read as an implicit rejection of other penalties,** including the kind of substantial damage awards that might be available in state court tort suits.

*Id.*, 74 F.3d 910, 915-916, emphasis added.

In this case, neither Batinovich or i2a sought bankruptcy protection. The Debtor's bankruptcy filing was an effort to preserve claims in pending litigation regarding the Debtor's lease and improvements which were promised but not made, including the right of offset. To the extent the Debtor had no realistic prospects to successfully reorganize, Bankruptcy Code Section 1112 provides the appropriate remedy: conversion or dismissal. This Court issued the appropriate statutory remedy by converting the case to chapter 7.

To the extent this Court seeks to exercise its inherent sanction authority, it is required to make an explicit finding of bad faith or willful misconduct, as discussed above. While the erroneous Batinovich declaration may have been negligent or reckless, it does not rise to the level of abuse of the bankruptcy process, given the disclosures which the Debtor and Batinovich made in late November 2007 and January 2008 regarding the Debtor's status following the asset sale to i2a.

Moreover, the Trustee cannot show any damages. The Trustee was appointed in September 2008, long after the confusion regarding the Debtor's status had been cleared up and long after the prepetition asset sale to i2a had been disclosed in the bankruptcy case. There is no legal or factual basis to hold Defendants liable for the Trustee's expenses in investigating the prepetition sale of the Debtor's assets to i2a.

**E. Defendants Are Entitled to Summary Judgment on the Fifth Claim for Relief Because the Trustee Cannot Make the Required Showing for Substantive Consolidation of Nondebtor Defendants with the Debtor**

In the Fifth Claim for Relief, the Trustee seeks to substantively consolidate the debtor with i2a and Batinovich on the grounds their financial affairs are so entangled that separation is not achievable on a practical basis.

Substantive consolidation is an equitable remedy by which the assets of the consolidated debtors are combined and the liabilities of the consolidated entities are paid out of a common pool of

LAW OFFICES
**GOLDBERG, STINNETT, DAVIS & LINCHEY**
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

assets. *Bonham v. Compton (In re Raejean Bonham)*, 22 F.3d 750, 764 (9th Cir. 2000). The authority of a Bankruptcy Court to substantively consolidate is not specifically provided for in the Bankruptcy Code. *Id*., at 763; *see also Collier on Bankruptcy* ¶105.09[1][b]. "[T]he power of substantive consolidation derives from the bankruptcy court's general equity powers as expressed in § 105 of the Bankruptcy Code." The primary purpose of substantive consolidation is to ensure the equitable treatment of all creditors. *Bonham* at 764.

While substantive consolidation may arise in various procedural contexts, there must be notice and an opportunity to be heard. *Bonham* at FN9. Here, there has been no notice to the creditors of Batinovich or i2a, and thus no opportunity for them to be heard. That alone deficiency alone precludes an order substantively consolidating Defendants with the Debtor.

Moreover, substantive consolidation is an extraordinary remedy which should be used "sparingly" *Bonham*, at 767. It should not be used as a mere device of convenience, e.g., to overcome accounting difficulties, where it would unfairly impair the vested rights of some of the creditors. *In re Bonham*, 226 B.R. 56, 76 (Bkrtcy. D. Alaska 1998), citing *Augie/Restivo.* Substantive consolidation should be considered with "extreme caution and granted only in extraordinary situations." *In re Bonham*, 226 B.R. at 88.

When considering whether to substantively consolidate nondebtors' estates with the case of an existing debtor, "even more care should be taken" as that is a "much more sensitive matter than consolidating existing debtors." *In re Bonham,* 226 B.R. at 88.

The Ninth Circuit has also stated that "cautionary principals" which apply to substantive consolidation "must be considered with particular care before a court orders *nunc pro tunc* consolidation: the power should be sparingly used and must be tailored to meet the needs of each particular case." *Bonham*, at 771.

In 2000, the Ninth Circuit explicitly adopted the Second Circuit's test for substantive consolidation set forth in *Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515 (2nd Cir. 1988), which is "(1) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; *or* (2) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors." *Id.* at 766 ("The

-13-

Case 08-05593   Doc# 22   Filed: 06/08/10   Entered: 06/08/10 14:33:31   Page 18 of 22

Second Circuit's approach is more grounded in substantive consolidation and economic theory; it is also more easily applied … [t]hus, we adopt it…"). [1] The analysis of whether substantive consolidation is appropriate in a particular case is a fact-specific one. *Id.* at 765 ("Only through a searching review of the record, on a case-by-case basis, can a court ensure that substantive consolidation effects its sole aim: fairness to all creditors.").

In *Bonham,* the debtor operated an investment business as a sole proprietorship, which was later incorporated as WPI. The business was actually a Ponzi scheme, and the debtor used WPI and another wholly-owned corporation, APFC, interchangeably to operate the scheme. Corporate formalities were not observed - the corporations did not issue shares, hold regular meetings, file tax returns, or have financial statements. Investment funds were commingled amongst the debtor, WPI and APFC. The debtor had over 1100 investors/creditors who filed claims totaling $53 million. There were no assets in the debtor's estate, the only source of recovery being avoidance claims against investors who had investment contracts with the debtor, WPI or APFC. The trustee filed over 600 avoidance actions and sought substantive consolidation in order to achieve an equitable distribution to creditors. The bankruptcy court ordered substantive consolidation in a lengthy decision discussing in detail the cases granting or denying substantive consolidation and setting forth extensive facts on which its ruling was based. The Ninth Circuit affirmed, explaining:

> Our abecedarian prerequisite to ordering substantive consolidation is that the two factors set forth in *Augie/Restivo* must be satisfied. That assessment requires that either (1) the creditors dealt with the consolidated entities as if they were the same, or (2) the affairs of the consolidated entities are so entangled that it would not be feasible to identify and allocate all of their assets and liabilities. **In either case, the bankruptcy court must in essence determine that the assets of all of the consolidated parties are substantially the same.** Moreover, the effect of substantive consolidation is to pool both the assets and

---

[1] The other circuit case the Ninth Circuit considered was the DC Circuit's test in *In re Auto-Train Corp., Inc.*, 810 F.2d 270, 276 (D.C. Cir. 1987), which looks at three factors, the first two of which establish a *prima facie* case for substantive consolidation:

1. The movant must show a unity of interest and identity between the entities to be consolidated;
2. The movant must show that consolidation is necessary to avoid some harm or to realize some benefit; and
3. Where a creditor will be prejudiced, the benefits of consolidation must heavily outweigh the harm.

Once a proponent of consolidation has shown the first and second factor (or made a *prima facie* case) "[t]he burden then shifts to an objecting creditor to show that '(1) it has relied on the separate credit of one of the entities to be consolidated; and (2) it will be prejudiced by substantive consolidation.'" *Bonham*, 22 F.3d at 766.

Case 08-05593   Doc# 22   Filed: 06/08/10   Entered: 06/08/10 14:33:31   Page 19 of 22

liabilities of the consolidated entities and to treat them as the same in satisfying the claims of the creditors.

*Id*. at 771, emphasis added.

The Trustee is not entitled to substantive consolidation of the nondebtor Defendants with the Debtor, as a matter of law, as creditors of Batinovich and i2a have had no notice or opportunity to object to substantive consolidation and the Trustee has provided no evidence that the assets of Batinovich, i2a and the Debtor are substantially the same or that their affairs are so entangled that it would not be feasible to identify and allocate them. In fact, the Debtor, i2a and Batinovich each have distinct creditors (Davis Declaration ¶ ___).

## F. Defendants Are Entitled to Summary Judgment on the Seventh Claim for Relief for Disallowance and/or Subordination of Any Claim by Defendants

By her Seventh Claim for Relief, the Trustee seeks to disallow any claim by the Defendants to the extent Defendants have failed to turn over property for which a transfer has been avoided. The Trustee also seeks to subordinate any claim of Defendants based on "Defendants' bad acts." Complaint, paragraph 68.

Bankruptcy Code Section 510(c) authorizes the bankruptcy court to subordinate claims in favor of the claims of other creditors under appropriate circumstances. Equitable subordination is "an unusual remedy [that] is remedial, not penal, [that] should be applied only to the extent necessary to offset the specific harm that the creditors suffered on account of the inequitable conduct." *See In re Applied Theory Corp.* 493 F.3d 82, 87 (2d Cir. 2007).

In general, courts have required that three conditions be met before a claim may be subordinated under Section 510(c): (1) the claimant must have engaged in equitable conduct, (2) the conduct must have resulted in injury to other creditors or an unfair advantage to the claimant, and (3) equitable subordination in the particular case must not be inconsistent with other provisions of the Bankruptcy Code. *In re Universal Farming Industries*, 873 F.2d 1334, 1336 (9th Cir. 1989). Inequitable conduct includes (1) fraud, illegality; breach of fiduciary duties; (2) undercapitalization; and (3) the claimant's use of the debtor corporation as a mere instrumentality or alter ego. *Matter of Herby's Foods, Inc.*, 2 F.3d 128, 131 (5th Cir. 1993).

///

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
LAW OFFICES
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA 94104

1    The party seeking subordination of a claim has the burden of demonstrating that subordination

2    is justified.  *See* <u>Matter of Fabricators, Inc.</u>, 926 F.2d 1458, 1465 (5th Cir. 1991).

3    As with the other extreme remedies which the Trustee seeks in this case, all appear to be

4    prompted by the misstatements in the early Batinovich declaration.  The Trustee's requests are

5    "overkill" in that any confusion regarding the status of the Debtor's operations was cleared up

6    relatively quickly – by late November 2007 when the Debtor filed its schedules and by January 2008

7    when the Debtor gave its Initial Debtor Interview, filed its initial operating report, testified at the

8    continued meeting of creditors, and filed its Statement of Financial Affairs.  The acts of Defendants

9    upon which the Trustee bases her claims for equitable relief do not constitute the type of misconduct

10   warranting the extraordinary remedies the Trustee seeks here.  Nor can the Trustee point to any

11   particularized harm resulting from the alleged misconduct described, as the Trustee has failed to

12   disclose any documents showing such harm or to disclose any damage calculations.

13   In addition, i2a has not filed a proof of claim in the Debtor's case.  Consequently, the Trustee

14   is not entitled to any relief on her Seventh Claim for Relief as against i2a.

15                          **III.  <u>CONCLUSION</u>**

16   The Debtor's prepetition sale of its assets to i2a was completed prior to the Debtor's

17   bankruptcy filing and was supported by adequate consideration.  Consequently, the sale is neither

18   void nor voidable.

19   The extreme sanctions which the Trustee seeks against Defendants for abuse of the

20   bankruptcy process, including without limitation, substantive consolidation, alter ego, equitable

21   subordination, and sanctions, are without legal or factual support and must be denied.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

-16-

1  WHEREFORE, for all of the foregoing reasons, Defendants request that summary judgment

2  be entered in Defendants' favor on all claims set forth in the Complaint, or alternatively for summary

3  adjudication of any issues for which summary judgment is not appropriate, in order to narrow the

4  issues for trial.

5

6  Dated:  June 8, 2010

7                                            GOLDBERG, STINNETT, DAVIS & LINCHEY
                                             A Professional Corporation

8

9                                            By:    /s/ Dennis D. Davis
                                                    Attorneys for Defendants
10                                                  i2a Technologies and Victor A. Batinovich

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
GOLDBERG, STINNETT, DAVIS & LINCHEY
A PROFESSIONAL CORPORATION
44 MONTGOMERY STREET, SUITE 2900
SAN FRANCISCO, CALIFORNIA  94104