# EXHIBIT B

PAUL E. MANASIAN (SB No. 130855)
GREGORY A. ROUGEAU (SB No. 194437)
THOMAS T. HWANG (SB No. 218678)
MANASIAN & ROUGEAU, LLP
400 Montgomery Street, Suite 1000
San Francisco, California 94104
Telephone: (415) 291-8425
Facsimile: (415) 291-8426

Attorneys for Plaintiff,
INTEGRATED PACKAGING ASSEMBLY CORPORATION

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

UNLIMITED JURISDICTION

| | |
|---|---|
| INTEGRATED PACKAGING ASSEMBLY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>OLD OAKLAND ROAD ASSOCIATES, LLC, a Delaware limited liability company; CANADA LIFE ASSURANCE COMPANY; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>1. **BREACH OF CONTRACT;**<br>2. **SPECIFIC PERFORMANCE;** and<br>3. **DECLARATORY RELIEF.** |

Plaintiff INTEGRATED PACKAGING ASSEMBLY CORPORATION (the "Plaintiff") hereby alleges and complains against Defendants OLD OAKLAND ROAD ASSOCIATES, LLC ("OORA") and CANADA LIFE ASSURANCE COMPANY ("Canada Life" and collectively, with OORA, the "Defendants"), as follows:

**PARTIES**

1. Plaintiff is a California corporation formed on August 12, 2003, whose principal place of business is located at 2221 Oakland Road, San Jose, CA 95131.

2. Defendant OORA is a Delaware limited liability company formed in or about October 2, 2006, and conducting business in California.

Page 1
COMPLAINT

Case: 08-05333   Doc# 27-2   Filed: 07/06/10   Entered: 07/06/10 14:06:04   Page 2 of 10

3. Defendant Canada Life is a Canadian corporation and a subsidiary of The Great-West Life Assurance Company, conducting business in California.

4. The true names and capacities, whether individual, corporate, associate, or otherwise of Defendants DOES 1 through 10 inclusive, are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff is informed, and believes, and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to and thereupon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrence herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

5. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each of the named defendants, including DOES 1 through 10 were agents, servants, and employees of their co-defendants, and in doing the things hereinafter alleged were acting within the scope of their authority as such agents, servants, and employees, and with the permission and consent of their co-defendants.

## GENERAL ALLEGATIONS

6. Plaintiff is a manufacturing and packaging company that provides production services to the semiconductor and electronics industries, in collaboration with its partner company based in Malaysia.

7. On September 1, 2003, Plaintiff and an individual named Joseph A. Sully ("Sully") who owned the commercial real property located at 2221 Old Oakland Road, San Jose, California (the "Premises") entered into a certain Lease Agreement (NNN R&D) (the "Lease Agreement"), whereby Plaintiff would lease 63,000 square feet of the Premises. A true and correct copy of the Lease Agreement is attached hereto as Exhibit A and is incorporated by this reference.

8. The Lease Agreement originally contemplated that Plaintiff would pay a monthly base rent of $37,800 per month

9. The Lease Agreement provides in its Paragraph 11.3 as follows: "Landlord's Repairs and Maintenance Obligations: Except for repairs rendered necessary by the intentional or

Page 2
COMPLAINT
Case: 08-05333   Doc# 27-2   Filed: 07/06/10   Entered: 07/06/10 14:06:04   Page 3 of 10

negligent acts or intentional or negligent omissions of Tenant or any of Tenant's Representatives and except for the parties' obligations under sections 11.1 and 11.2, above, Landlord agrees, at Landlord's sole cost and expense, to (a) keep in good repair the structural portions of the floors, foundations and exterior perimeter walls of the Building (excluding the roof membrane) as, and when, Landlord determines such replacement to be necessary in Landlord's sole discretion."

9. Commencing in or about **[MONTH?]** _____ 2003, Plaintiff discovered various deficiencies in the structure of the Premises, including damaged ceiling and floor tiles, loose-fitting windows and _____. Such deficiencies diminished Plaintiff's use and enjoyment of the Premises for the purposes required to conduct its business operations. Consequently, Plaintiff through its CEO and representative Victor Batinovich ("Batinovich"), repeatedly notified Sully of the deficiencies and requested that they be repaired.

10. Commencing in or about [month??] 2003, Plaintiff learned that throughout the pendency of its tenancy, Plaintiff had been overcharged rent for the lease of a space 63,000 square feet although Plaintiff's leased portion of the Premises including common areas (i.e., elevator, fire escapes, lobby, electrical room), actually aggregated to only 57,000 square feet. Additionally Plaintiff had been paying for the cleaning and maintenance of the common areas which aggregated to approximately 4,700 square feet - including the costs for air conditioning and electricity to such areas although the common area space was shared with other tenants.

11. In [month], 2003, Sully orally agreed with Plaintiff through Batinovich to reduce Plaintiff's rent due to the deficiencies in the Premises and the errors of the overcharges to Plaintiff, to $32,000 per month. Sully further agreed to repair the various deficiencies and determined that it would cost approximately $250,000 for the repairs. Plaintiff is informed and believes that Defendant Canada Life was aware of these agreements between Sully and Plaintiff.

12. On information and belief, in [month??] 2003, Sully contracted with another company and tenant of the Premises, OSE[??], to repair the deficiencies of the Premises and to certify the functionality of the equipment thereupon (the "Sully-OSE Agreement"). However, neither Sully nor OSE ever completed any such repairs.

13. In or around September 2004, a Japanese company which intended to move into

the Premises to collaborate its operations with those of Plaintiff, visited the Premises and due to the substandard conditions there, decided to not to move into the Premises.

14. In October 2004, Batinovich made a request to Sully to reduce the area that it leased by 25,000 square feet because it did not use the space. At that time, Canada Life was in the process of taking possession of the Premises from Sully so Sully did not make a decision on Plaintiff's request to reduce its leased space.

15. On information and belief, in 2004, Canada Life assumed possession and control over the Premises from Sully, thereby assuming the Lease Agreement and any and all related oral modifications thereto.

16. Due to the various aforementioned deficiencies of the Premises, Plaintiff was unable to sublease a portion of its leased space which it did not use, though it had desired to do so. However, in or around [month??] 2005, Plaintiff was informed that another tenant of the Premises would lease such Unused Space.

17. In or around April 2005, Batinovich informed Canada Life, through its representative William Costello Jr. ("Costello"), that Plaintiff had been overcharged during the pendency of its tenancy of the Premises. Batinovich also demanded that the Lease Agreement be amended in writing and that Canada Life reimburse Plaintiff for its expenses paid on behalf of Canada, and Costello indicated that Canada Life would do so.

18. In May 2005, Batinovich requested from Canada Life, through its representative Brian Schwartz ("Schwartz"), a modification of the Lease Agreement by June 1, 2005, to reflect the actual amount of space leased by Plaintiff and the amount of rent to be paid thereupon. Plaintiff also informed Schwartz of the OSE-Sully Agreement. Furthermore, Plaintiff requested that it return the portion of its leased space which it did not use to Canada Life which could in turn, lease it to the other tenant which had already expressed its willingness to do so.

19. On June 30, 2005, Plaintiff informed Schwartz and Costello that it had replaced a fence around the Premises so as to prevent and preclude the ongoing trespass of individuals onto the Premises and Plaintiff's leased property. Plaintiff further again informed Schwartz and Costello of the various deficiencies of the Premises, including damaged floor and ceiling tiles,

uncovered floor areas, and damaged walls, in addition to the overcharged rent that it continued to pay.

20. On August 18, 2005, Plaintiff through Batinovich again reiterated to Canada Life its concerns with the lease, the deficiencies of the Premises and the overcharges asserted by Canada Life, and again demanded that Canada Life provide at minimum a written summary of the modifications to the Lease Agreement.

21. In or around November 2005, Plaintiff was frustrated with the inability to repair the deficiencies of the Premises and to correct the errant, excessive charges billed to Plaintiff. Furthermore, Plaintiff did not require the entire space it had been renting since the inception of the lease. Also in November 2005, Plaintiff entered into discussions to lease a different site where it would move its operations. However, based upon express representations made by Canada Life that it would amend the Lease Agreement to fulfill Plaintiff's demands, Plaintiff did not move its operations.

22. In November 2005, Canada Life informed Plaintiff that it would require Plaintiff to continue leasing the same portion of the Premises as it had been leasing but would decrease the amount of rent on such space to be reflected in a revised lease agreement.

23. On January 3, 2006, Batinovich informed Schwartz that the roof at the premises was leaking and consequently, that Plaintiff's production floor had been flooded. Batinovich further informed Schwartz that water was seeping through the floor tiles and indicated again that the tiles required replacement.

24 In or around February 2006, Canada Life, through Schwartz, sent a proposed revised lease agreement (the "Revised Agreement") to Plaintiff. Batinovich responded on February 16, 2006, to the proposal by objecting to various provisions. Specifically, Plaintiff indicated the following: Plaintiff would not agree to pay for storage space that had been included in the Proposed Revised Agreement; Plaintiff would pay $32,000 monthly in total (including all additional fees); and Plaintiff would maintain facility equipment in good working condition at its own expense only to the extent that such equipment did not require replacement.

25. On March 17, 2006, Batinovich again informed Schwartz that water was seeping through the floor tiles in the Premises and that the problem needed to be addressed. Batinovich further informed Schwartz that some windows of the Premises did not fit securely and were about to fall out of their frames and that the air conditioning systems were outdated and required replacement.

26. On April 13, 2006, due to the fact that Plaintiff had not received a response from Canada Life regarding the Revised Agreement, Batinovich contacted Schwartz again to request consummation of the Revised Agreement to memorialize its verbal agreement with Canada Life to pay $32,000 per month.

On [date??], 2006, Canada Life allegedly sent a proposed Revised Agreement to Plaintiff, requiring that Plaintiff accept the terms set forth therein and execute the proposed Revised Agreement within 10 days. Plaintiff's representative Batinovich was not in the country at the time the proposed Revised Agreement was sent and therefore did not receive it until his return in [date??], 2006. Upon his return, Batinovich sent his acceptance of the Revised Agreement. However, Canada Life rejected Plaintiff's acceptance and instead stated that Plaintiff was bound by the original Lease Agreement.

On information and belief, in or around October 2006, OORA purchased the Premises from Canada Life and assumed control and possession of the Premises.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

Plaintiff hereby incorporates by this reference paragraphs 1 through above, inclusive, as though fully set forth herein.

As set forth supra, in November 2005, for valuable consideration, Plaintiff and Sully entered into a modification of the Lease Agreement whereby Sully agreed to accept $32,000 per month in rent payments from Plaintiff and to reimburse Plaintiff for its contributions paid for the maintenance and improvements of the Premises. Sully further agreed to repair the various deficiencies in the damaged structure of the Premises. When Canada Life assumed possession and control of the Premises, it assumed the oral modifications to the Lease Agreements made by

Sully and Plaintiff.

As set forth supra, in , for valuable consideration, Plaintiff and Canada Life entered into an oral agreement whereby Canada Life agreed to repair the various deficiencies in the damaged structure of the Premises, agreed to accept $32,000 per month in rent payments from Plaintiff and agreed to reimburse Plaintiff for its contributions paid for the maintenance and improvements of the Premises. Canada Life further agreed to memorialize the oral modifications to the Lease Agreement made by it and by Sully in the Revised Agreement. When OORA purchased ownership of the Premises from Canada Life, it assumed the oral modifications to the Lease Agreement made by Sully and Canada Life with Plaintiff.

Defendants breached the parties' agreement by, inter alia, failing to repair the deficiencies of the Premises, by failing to modify the Lease Agreement and by failing to reimburse Plaintiff for its contributions paid for the maintenance and improvements of the Premises.

Plaintiff has satisfied the terms and provisions of the Lease Agreement and the oral modifications thereto, by continuing to lease the Premises and to pay rent to Canada Life.

As a direct and proximate result of the Defendants' breach of the parties' agreement, Plaintiff has been damaged in the sum of $??amount??

WHEREFORE, Plaintiff prays as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Specific Performance)

Plaintiff hereby incorporates by this reference paragraphs 1 through above, inclusive, as though fully set forth herein.

. Plaintiff City has performed the terms and conditions on its part to perform, of the agreements between the parties that constitute modifications of the Lease Agreement.

Defendants have breached the various oral agreements that constitute modifications of the Lease Agreement by failing to repair the deficiencies of the Premises, by failing to modify the Lease Agreement and by failing to reimburse Plaintiff for its contributions paid for the maintenance and improvements of the Premises.

Plaintiff is entitled to specific performance of the oral modifications to the Lease

Agreements. Plaintiff has relied to its detriment on the oral agreements with Defendants. As a result, Plaintiff has continued to conduct its business operations in substandard conditions while making payments for expenses and improvements for which Plaintiff is not responsible. Furthermore, based on Canada Life's misrepresentations, Plaintiff did not move its operations to a preferable and more economical site.

Unless and until specific performance of the oral modifications to the Lease Agreements is ordered, Plaintiff will continue to sustain injuries to its business operations. The conditions of the Premises do not meet the standards which enable Plaintiff to fully conduct its operations. Furthermore, Defendants continue to charge Plaintiff for expenses and rent for this it is not responsible.

Plaintiff has no adequate remedy at law for the injuries currently being suffered and that it will continue to suffer because monetary damages would be inadequate if Defendants do not perform on the terms of the oral agreements with Plaintiff.

### THIRD CAUSE OF ACTION
(Declaratory Relief)

Plaintiff hereby incorporates by this reference paragraphs 1 through 77 above, inclusive, as though fully set forth herein.

An actual controversy now exists between Plaintiff and Defendants concerning their respective rights, duties, and obligations under the Lease Agreement and the oral modifications made thereto.

Plaintiff desires a judicial determination and declaration of the parties' respective rights, duties and obligations under the Lease Agreement and oral modifications thereto, that, in accordance with the mutual intent of the parties at the time of contracting as evidenced by their course of dealing following the signing of the Lease Agreement and the oral modifications thereto:

(i) Plaintiff shall be required to pay only $32,000 per month for its rent under the Lease Agreement;

(ii) Plaintiff is entitled to reimbursement for its expenses incurred for the cleaning and

Case: 08-05333   Doc# 27-2   Filed: 07/06/10   Entered: 07/06/10 14:06:04   Page 9 of 10

1 | maintenance of the common areas of the Premises;
2 | (iii) Plaintiff is entitled to reimbursement for its payments of amounts overcharged by
3 | Defendnats;
4 | (iv) Defendant is required to repair the deficiencies of the Premises set forth hereinabove and to
5 | maintain the conditions of the Premises. Defendant is further required to replace any equipment
6 | on the premises when any such equipment is no longer in working condition;
7 | (v) Defendant is required to memorialize the terms of the Revised Agreement, as set forth in this
8 | paragraph herein, in a written and signed legal document.

WHEREFORE, Plaintiff prays for judgment as follows as to the above causes of action, inclusive:

## PRAYER

1. For compensatory damages in the amount of ?????, by reason of Plaintiff's First Cause of Action;

2. For an Order directing Defendants to specifically perform under the terms and conditions set forth by the Lease Agreement and all oral modifications thereto, by reason of Plaintiff's Second Cause of Action;

3. For a judicial determination and declaration of the parties' respective rights, duties and obligations under the Lease Agreement and oral modifications as set forth hereinabove, by reason of Plaintiff's Third Cause of Action;

4. For costs of suit incurred herein; and

5. For such other and further relief as the Court may deem just and proper.

DATED: October 16, 2006        MANASIAN & ROUGEAU, LLP


By:_____
   Paul E. Manasian
   Attorneys for Plaintiff, Integrated Packaging
   Assembly Corporation

\\Gradl\m&r\IPAC\Pleadings\Complaint rev.wpd