# EXHIBIT D



**Manasian, Paul E.**

| | |
|---|---|
| **From:** | Victor Batinovich [victor@ipac.com] |
| **Sent:** | Thursday, September 28, 2006 7:04 PM |
| **To:** | Manasian, Paul E. |
| **Cc:** | chris.ooi@ipac.com |
| **Subject:** | Proposed Letter to Canada Life re Lease Problems |

*Mr. Manasian,*

*Thank you for your email and two attachments that you included*

*Your firm engagement letter is signed and will be returned to you by mail. We will also fax a copy of the same.*

*As for the letter, I will once again go over it and make some changes that may not be right.*

*In addition, I feel that we need to be a bit more forthright as well as list a few more items ( delineate some of the fundamental issues ) so that there are no questions about their negligence, their delays to get to a final point rather than IPAC / us ,as stated in their letter.*

*Some of the things that I wish to clarify here are as follows.*

*The original owner, Mr. Sully misrepresented square footage ( he did cover his tail by stating approximately, however we are talking about 10,000 + ft sq - inclusive of the common area )*

*Mr. Sully was to certify all facility related equipment ( replace dead / obsolete units ) and after that we were to maintain the entire system. This we would do even if he did not ask for, as it is in our best interest to do so, given the fact that our production must be done in a controlled environment (temperature and humidity)*

*He projected $250,000 improvements ( very small amount was spent on conference room carpet replacement.*

*When we entered into this agreement with Mr. Sully, what we did not know was Mr. Sully was negotiating with Canada life to keep this campus (he lost his tenants and his cash flow was lower than what his payments were to Canada Life). This negotiation went on for a long time and not knowing that, he would prevail, Mr. Sully did not wish to spend any money.*

*When Canada Life took over, we showed them unfinished floors ( no tiles no carpets) that later on we on our own fixed /replaced.*

10/2/2006

*We showed them the section of the building (15 to 20K ft sq) where the ground water was seeping through the floor and floor tiles were lifting off. This is our production area. Both owners failed to fix / do anything about.*

*When Canada Life elected to drag their feet on these issues (for 1 year they did nothing to fix improve the space) I told them that waited two years (between them and Mr. Sully) to fix these premises. Since they failed to as agreed, we shifted some of our production to Asia and as such, our requirements changed; we needed to shed about 25 to 30 K ft sq. I proposed we retain about 30 K ft and pay $0.65 to $0.70/ ft. It was Canada Life, (Brian Schwartz) who proposed we keep the footage as it were, and they would reduce the rent to $ 32k/ mo inclusive of NNN. You have emails that went back and forth between us.*

*We agreed and they were to generate all necessary documents reflecting all that for us to review and sign. It was Brian who dragged his feet (see my emails where I repeatedly asked for these documents). It was June of this year (don't know dates – all documents are at your place) when they rushed these documents to us and Brian gave us one week to sign. Both Chris and I were in Asia and needles to say we did not sign as requested. I wanted to make sure not only that Chris and I review these but an outside expert. By time we got to do so they and through their legal firm (June 2006 time frame) informed us that they will enforce a contract dated September 2006. They must be related to Harry Potter – they could predict the future.*

*Our needs are 30 or so K ft sq and if Canada wishes to rewrite the contract to reflect that at say $0.65 to 0.70/ftsq, we will accept that.*
*The second option is as per Canada – IPAC previous agreement- keep the footage intact and we pay $32k / mo inclusive of NNN.*

*Canada life (or whoever new owner may be) will fix those problems (ground water seeping- replace tiles as well as fix/ replace dead and obsolete facility related equipment – Air conditioners, compressors etc) which we highlighted to them.*

10/2/2006

*Since this is multi tenant building, and as requested by us many times, Canada life will secure the access from one tenant area to another tenant area ( electronic locks with alarms ). We do a lot of government/military product and we loose a lot of business do to this problem. We informed Canada Life and their management company of that issue and they elected to ignore it just like all other items.*

*This said, our objective is to resolve these issues and sign a renewable contract. I do not have any problems signing 5 year renewable as per our previous ( verbal agreement that was reflected in their written proposal) and go on with our lives.*

*To the extent that we need to go to court over these issues, then I want to take a much tougher stand and go for damages, loss of business and other items. This once again should be the case if they elect to pee on our shoes.*

*Please rewrite that letter to reflect these various steps / requests they ignored.*

*Thank you .*

*Victor Batinovich*
*408 321 - 3600*
*408 516 - 8903 fax*
*victor@ipac.com*
*www.i2a-tech.com*

---

*The information transmitted is intended only for the person or the entity to which is addressed and may contain confidential and / or privileged material. Any review, retransmission, dissemination or other use of, or taking of any action in reliance upon this information by persons or entities other than the intended recipient is prohibited. If you received this in error, please contact the sender and delete the material from email system.*

---

**From:** Manasian, Paul E. [mailto:manasian@mrlawsf.com]
**Sent:** Wednesday, September 27, 2006 4:47 PM
**To:** Victor Batinovich
**Cc:** chris.ooi@ipac.com
**Subject:** Proposed Letter to Canada Life re Lease Problems

10/2/2006

Victor:

Enclosed is a proposed letter to Canada Life's attorney regarding the lease dispute, as well as our standard engagement agreement. Please let me know your thoughts re the letter, or if you have any questions or concerns regarding the engagement agreement.

My assumption is that we should only wait a few days for a response to the letter, and if we don't get anything that indicates that they are going to document the $32k rent immediately, IPAC should consider filing the lawsuit so as to get off the "first punch" in court.

I will be available all day tomorrow to discuss any comments or revisions you might wish to make.

Best Regards,
Paul

Paul E. Manasian, Esq.
Manasian & Rougeau, LLP
400 Montgomery Street, Suite 1000
San Francisco, California 94104
Tel. 415-291-8425
Fax 415-291-8426

10/2/2006