REIDUN STRØMSHEIM # 104938
LINDA SORENSEN # 72753
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Fax: (415) 989-2235

Attorneys for Trustee,
CAROL W. WU

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>INTEGRATED PACKAGING ASSEMBLY CORP.<br>Dba IPAC<br>Tax ID # 47-0929011<br><br>      Debtor. | Case No. 07-53563 ASW<br><br>Chapter 7 |
| CAROL W. WU, Trustee,<br>      Plaintiff,<br>v.<br><br>VICTOR A. BATINOVICH; i2a TECHNOLOGIES,<br>      Defendants. | AP # 08-5333<br><br>Telephonic: December 10, 2010<br>Time: 3:00 p.m. |

UPDATED PLAINTIFF'S TRIAL SETTING CONFERENCE STATEMENT

This updated Trial Setting Management Conference Statement is filed by plaintiff Carol Wu ("Trustee"), Chapter 7 trustee of the above referenced bankruptcy estate.

At the November 8, 2010 hearing, the Trustee's motion [ECF #45] to take the default of defendant i2a Technologies, Inc., and the Trial Setting Conference were continued to December 10, 2010. i2a Technologies would have its answer stricken and default entered if it does not have counsel. The defendants were warned to file an updated joint trial setting conference statement no later than December 3, 2010. Mr. Batinovich was directed not to communicate directly with Trustee's counsel.

The current status is that Attorney D. Brad Jones of Needham Kepner Fish & Jones LLP

sent an email to Plaintiff's counsel on the afternoon of December 2, 2010, and filed a notice of representation of defendants this date, on December 3, 2010.  Because of the last-minute timing, it was too late for Plaintiff's counsel to receive an ink signature of Attorney Jones in order to comply with ECF filing rules, and in any event at that point her schedule did not permit working with Attorney Jones for a joint updated statement.

At the prior hearing, the Court directed counsel for Plaintiff to contact various claimants regarding the status of their claims, and in some instances, to provide claimants with written "withdrawal" documents.[1]  This occurred because at hearing, Mr. Batinovich had taken the position that there are no valid claims and that the Plaintiff Trustee is acting improperly in seeking redress for defendants' abuse of the bankruptcy system and withholding of the assets of the bankruptcy estate from the estate representative.

The result of these investigations is that the Trustee has the same group and amount of constituent creditors' claims as ever, including those creditors most actively aggrieved by defendants violations.  Mr. Batinovich has caused further legal expense to be incurred by making baseless assertions.

Plaintiff provides an overview:

At the beginning of the Chapter 11 case, Debtor's landlord Old Oakland Road Associates ("OORA") was trying to get its premises back; the Chapter 11 filing was made to stall it further beyond the expiration of a litigated prepetition extension agreement.  OORA filed <u>Claim #6 for $647,446.76 of GUC, and $128,584.99 of administrative expense</u>.  OORA was then outraged when Mr. Batinovich took the position, after moving to new premises, that the operating business was not the entity that had filed for bankruptcy protection.  OORA and the United States Trustee moved to dismiss or convert the Chapter 11 case, but Debtor tried to stay in Chapter 11.

OSE, Inc., was suing Debtor on a promissory note, and obtained relief from stay to liquidate its claim in State Court for bankruptcy allowance purposes.  OSE, Inc., filed <u>Claim #7</u>

---

[1] Plaintiff had previously provided full descriptions of the claims to defendants' counsel, and in addition produced a full Bates-stamped copy of all of them to Mr. Batinovich.

STROMSHEIM & ASSOCIATES

for $1,175,136.99.

Two years ago, Defendants herein (through their attorney D. Brad Jones) asked the Plaintiff to defer litigation, arguing that they were about to eliminate these two claims by settlement in State Court, which would make the bankruptcy case easier to settle if claims were small and the Trustee had minimal legal expense. The Court accommodated this by permitting a long extension. But that settlement absolutely failed, and the parties were required to go forward with the litigation on the assumption that the Plaintiff was liquidating assets for very substantial claims.

After the last hearing in this Adversary Proceeding, Plaintiff sent the claims withdrawal forms to be signed by OORA and OSE, but counsel in charge has reported that the claims are not yet in a position to be withdrawn, because once again, the supposed settlement (involving Mr. Batinovich) is dragging on, incomplete.

Plaintiff sent an inquiry to the IRS (Claim #1), and learned that contrary to Mr. Batinovich's assertions, no tax returns have been filed and the Service's estimated claims still stand. The Franchise Tax Board (Claim #3, #4) has not responded.

Claim #5 for $21,785 of Manasian & Rougeau still stands. That firm is Plaintiff's witness that Mr. Batinovich obtained their legal services on behalf of Debtor, showing them the valuable equipment and the operations as Debtor's, and filing pleadings in State Court making similar assertions about the operating business and its customers as were filed in the Bankruptcy Court.

The United States Trustee has filed for unpaid Chapter 11 fees, and upon inquiry that amount appears uncertain and subject to increase depending on the results of the litigation including an accounting for operations that continued during the Chapter 11 that were not accounted for by Debtor.

Inquiry has not produced an answer to the question of whether counsel for the Debtor-In-Possession will apply for administrative compensation for its services beyond the retainer. The statement of unpaid debts incurred during the Chapter 11 included only that bankruptcy counsel. While it is possible that the operating business incurred no other unpaid debts, the signs point to the contrary. For example, there has been a recent District Court decision in C10-0603 TEH

against i2a Technologies that indicates that i2a Technologies received $613,649.46 by mistake from its customer ON Semiconductor when it was owed less than $25,000 and declined to return the mistaken payment.

As was discussed previously, Mr. Batinovich when faced with the decision of accepting dismissal of the Case, knowing that well-represented creditors intended to obtain redress for his i2a Technologies "shell game," as opposed to having a Chapter 7 trustee appointed with no funding to pursue the matter, he chose the unfunded trustee option. Whereas if the defendants had come to grips early in the Case with the fact that nevertheless, the appointed trustee was going to obtain redress, they could have resolved the matter without facing large litigation costs. Instead, the defendants have pursued a course of action of causing the Trustee to invest more and more legal effort. They hope - futilely - to cause the Trustee to give up. Through counsel, and through Mr. Batinovich in propria persona, defendants claim that the Trustee is "churning" the case for no good reason. The assertions in that regard are nothing but "hot air." Debtor's estate has very substantial debt even now, and the Trustee's duties require her to liquidate the estate's assets to pay that debt. The fact that Mr. Batinovich may in the future succeed in removing some but not all of Debtor's debt through means outside the bankruptcy case, does not change that reality. Furthermore, there is no principle that a Trustee should not administer an estate if, for example, Debtor's principals eventually succeed outside of Bankruptcy Court to reduce the claims to less than $100,000.

To date, the value of the services of counsel for the Trustee is approximately $95,000, with costs an additional $3,100. The Trustee herself has performed services and will be entitled to compensation. When the Trustee obtains funds in the estate, there will be accounting tasks to complete and an expenditure of funds for the services of accountants.

The substance of this action has been extensively explored in prior hearings as for example in connection with defendants' motion for partial summary judgment. Ultimately, Mr. Batinovich can only admit that at all material times he possessed the ability to designate and effectuate under which shell (as in "shell game") the assets were located. In fact, the evidence will show that the operating business was using the name "IPAC" and was holding itself out to creditors and

customers alike as the same as Debtor. An operating business was put into a Chapter 11 for advantages, and then a "switcheroo" was attempted in order to avoid the consequences. A serious abuse of the bankruptcy system occurred through Defendants' manipulation of the filing of a Chapter 11 case for Debtor, and their actions in that case. The recent Ninth Circuit decision in *In re Schwarzkopf*, 08-56974 (filed November 23, 2010), attached, provides additional fuel that Mr. Batinovich's alter ego actions directed towards the Bankruptcy Court itself should be redressed by determining that the operating business is in fact within the bankruptcy estate, and that Mr. Batinovich's "secured" proof of claim should be disallowed or subordinated.

Dated: December 3, 2010.

STROMSHEIM & ASSOCIATES

By  *Linda Sorensen*
LINDA SORENSEN, Attorneys for
CAROL W. WU, Trustee, Plaintiff