REIDUN STRØMSHEIM # 104938
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Fax: (415) 989-2235

Attorneys for Trustee,
CAROL W. WU

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>INTEGRATED PACKAGING ASSEMBLY CORP.<br>Dba IPAC<br>Tax ID # 47-0929011<br><br>    Debtor. | Case No. 07-53563 ASW<br><br>Chapter 7 |
| CAROL W. WU, Trustee,<br>    Plaintiff,<br>v.<br><br>VICTOR A. BATINOVICH; i2a TECHNOLOGIES,<br><br>    Defendants. | AP # 08-5333<br><br>Trial: October 31, 2011 or as set<br>Time: 9:00 a.m. |

## PLAINTIFF TRUSTEE'S TRIAL BRIEF

This Trial Brief is filed on behalf of Plaintiff Carol W. Wu, Chapter 7 Trustee ("Trustee") in the above-entitled Case.

Victor A. Batinovich ("Mr. Batinovich"), who at the time was sole owner of the purportedly separate corporations Integrated Packaging Assembly Corporation dba IPAC ("IPAC") and i2a Technologies ("i2a"), caused to be filed a Chapter 11 bankruptcy case on October 31, 2007 for an operating business with "55 full-time employees"– a business that was "primarily packaging (chip assembly) and testing of semiconductors" using its "highly sophisticated" and valuable equipment, with a customer base that included "both government and

non-government business both domestically and internationally." The operating business used the names IPAC and Integrated Packaging Assembly Corporation, although perhaps not exclusively. The operating business filed Chapter 11 to prevent eviction by its then-current landlord in San Jose, to obtain time to make new space available in Hayward and move substantial equipment and personnel. It achieved that goal including by protesting the San Jose landlord's violation of the automatic stay and by contesting the San Jose landlord's relief from stay motion and obtaining a Court order that provided it time to relocate. It obtained the benefit that it sought by utilizing the Chapter 11 processes. It presented itself to the Court and the participants in the Case including the movant landlord, the creditors it included on its matrix, and the United States Trustee as <u>a single economic unit</u>, until it had achieved the goal and obtained the benefit it sought. The business was moved to the Hayward premises and even now continues to operate under Mr. Batinovich's control, including by using the IPAC names. At the business' election, the Case was converted to Chapter 7 in mid-2008 rather than being dismissed, so that an unfunded Chapter 7 trustee would be in charge of pursuing redress. The business has refused turnover to the Trustee.

The operating business, and all of its assets, are property of the bankruptcy estate, which have been knowingly, unlawfully and wilfully withheld from the Trustee. The Trustee is entitled to the operating business and its assets, and judgment for any diminution in their net value. No reduction for any additions or improvements is appropriate. Sanctions pursuant to 11 U.S.C. §105(a) should be awarded against the perpetrators for fraud on the Court, violations of the automatic stay and abuse of the process of the Court including unfair litigation tactics. Any claim of Mr. Batinovich, secured or unsecured, should be disallowed as fictitious, disallowed through recharacterization as equity, or subordinated to the claims of general unsecured creditors in the Case on account of his bad acts.

## STATEMENT OF FACTS

Defendants' defense is based on a contention that that IPAC sold its assets, an operating high-technology manufacturing business, to i2a Technologies "as of" January 28, 2006, and the further contention that the operating business is not who filed bankruptcy on October 31, 2007.

IPAC held the lease of premises at 2221 Old Oakland Road, San Jose, California (the

"San Jose Premises"). In the period leading up to the bankruptcy filing, it was in a dispute with the landlord, Old Oakland Road Associates, LLC ("OORA"), and the property manager, South Bay Construction and Development Company I ("South Bay"). IPAC sued both as part of Case No. 1-06-CV074006 filed on October 31, 2006 in the Santa Clara County Superior Court (the "2006 Action"). The 2006 Action was therefore filed more than nine months after the purported change of ownership of the high-tech manufacturing business, but you would not know that from the allegations it contained.

The evidence will show that Mr. Batinovich hired the law firm Manasian & Rougeau, LLP, to represent IPAC as plaintiff in the 2006 Action, and that Mr. Batinovich gave a tour of the operating business and the San Jose Premises to Paul E. Manasian, stating that IPAC owned the extensive equipment and employed the workers in view, explaining the sensitive nature of its business operations and important government clearances that IPAC held, and describing the harm that IPAC's business was suffering from the actions of OORA and South Bay. Mr. Batinovich participated in drafting the complaint that commenced the 2006 Action, which complaint described IPAC's business. In IPAC's opposition to a demurrer to the 2006 Action complaint IPAC further complained of subsequent damages to its business from water leaks and intrusion into its premises.

Mr. Batinovich wrote a letter to South Bay dated May 22, 2007 (16 months after the purported change of ownership), on IPAC Integrated Packaging Assembly Corporation letterhead, complaining of harrasment and "considerable harm to the current economic condition of our company," including "a negative assumption on the part of our employees, customers and prospective customers." On July 18, 2007 Mr. Batinovich wanted Manasian & Rougeau to amend the 2006 Action to ask for "$5 to $10 million economic damages," and described IPACs grievances because eviction notices were being seen by its vendors and customers.

On July 19, 2007, attorney D. Brad Jones formally substituted into the 2006 Action in place of Manasian & Rougeau.

IPAC continued to incur unpaid claims of creditors, including without limitation the claim of Manasian & Rougeau and the claim of OORA.

STROMSHEIM & ASSOCIATES

Case: 08-05333   Doc# 72   Filed: 10/17/11   Entered: 10/17/11 16:40:48   Page 3 of 15

3

Through pursuit of the 2006 Action, IPAC had negotiated for time to move to different premises. But the extension - to November 1, 2007 - that IPAC obtained by agreement in the 2006 Action and separate unlawful detainer action, turned out not to be sufficient. OORA was poised to execute a writ of possession.

On October 31, 2007, a Chapter 11 petition was filed under the IPAC name and tax identification, with Victor A. Batinovich, President, as the signing officer and Campeau Goodsell Smith LC as attorneys for the Debtor. The petition form stated assets between "$1 million to $100 million" [Main Case ECF #1].[1] On November 2, 2007, OORA filed a relief from stay motion concerning the San Jose Premises [Main Case ECF #7]. Mr. Batinovich's declaration in opposition was filed on November 8, 2007 [Main Case ECF #11], testifying about the debtor-in-possession's business, number of employees, equipment and "significant assets", recent business reverses in its manufacturing processes, customers, new lease in Fremont, and its need for additional time to move out of the San Jose Premises to the new Fremont facility. He complained about damages to the Debtor caused by OORA and the Santa Clara County Sheriff for postpetition actions on November 1, 2007. He had succeeded in causing OORA and the Sheriff to "back off" based on his claim that they had violated the automatic stay, which of course would not have been applicable to protect any entity other than the debtor-in-possession.

Meanwhile on November 2, 2007, through new counsel D. Brad Jones, IPAC filed its second amended complaint in the 2006 Action, seeking $500,000 of damages for relocation expenses.

Hearing was held on the stay relief motion on November 9, 2007, and the Court's minutes (Main Case) reflect that IPAC succeeded in extending the automatic stay for the time it needed, to December 10, 2007:

---

[1] The Trustee requests that the Court take judicial notice of the content of its own files in the Main Case and in the Adversary Proceeding, and take into consideration the testimony previously given by Victor A. Batinovich before it as the responsible person, and the representations made on behalf of IPAC on the record in hearings. Events of the Main Case form a principal basis of the Trustee's action, and the Trustee distinguishes ECF citations by referring to "Main Case ECF", or for this adversary proceeding "AP ECF".

1  Hearing Held (RE: related document(s) 7 Motion for Relief from Stay and for Order
   Directing the Debtor To Surrender Real Property RS #RAF-001, Filed by Creditor Old
2  Oakland Road Associates, LLC. Motion granted effective 12/10/07, the debtor is ordered
   to vacate the premises on or before 9:00 AM on 12/10/07; parties have agreed to the Court
3  issuing an Order for Writ of Possession for execution by a Federal Marshall any time after
   9:00 AM on 12/10/07; debtor has agreed to deposit administrative rent for November
4  ($48,000.00) NLT 11/26/07 into a trust account maintained by Murray & Murray, if not
   paid there will be a twenty-four hour default notice, if not cured movant has relief on
5  declaration and the Court will issue a Writ of Possession; the prorated portion of
   administrative rent ($16,000.00) for December, 2007 to be paid NLT 12/3/07; monies to
6  remain in the Murray & Murray trust account until further agreement of the parties or
   order of the Court. The deposit is to be made by wire transfer or certified funds. The
7  landlord will perform the environmental inspection and clearance of hazardous materials
   permit at tenant/debtor?s expense, the landlord agrees that will be a reasonable expense;
8  debtor to cooperate with the reasonable request from the landlord for access to and
   inspection of the premises; debtor waives 4001(a)(3), debtor?s attorney to sign off on the
9  order.(tb, ) (Entered: 11/15/2007)

10    No Schedules nor Statement of Financial Affairs had been filed with the Petition

11 commencing the Case. Pursuant to Debtor's request supported by a November 13, 2007

12 declaration outlining the disruption of Debtor's business and the moving efforts [Main Case ECF

13 #19], the deadline was extended and they were due November 29, 2007. (They were not filed

14 until that date, and were filed with the Case number left blank.) But far earlier than the filing of

15 the schedules, Mr. Batinovich was telling Debtor's counsel that once "we are out (December 10th),

16 I would like to pull out of Chapter 11 all together." He was telling Debtor's counsel that IPAC

17 does not have any creditors, any activities, or any bank accounts. He said, "you know why we did

18 what we did!" while asking for advice how to get out of the Chapter 11. But Debtor's counsel

19 nevertheless obtained a rescheduling of the United States Trustee's IDI based on the same "story"

20 that the Debtor was too busy moving.

21    Debtor's Chapter 11 Status Conference Statement was filed on November 27, 2007 [ECF

22 #23], again claiming that Debtor had the business operations, and had signed a lease for a new

23 facility in Fremont and was moving.

24    The meeting of Creditors was held on November 28, 2007 (the afternoon before IPAC's

25 filings of Schedules without a Case number, that indicated that Debtor had no assets other than

26 litigation - the 2006 Action - valued at $548,000). Mere hours before that inconsistent filing that

27 no one took note of until later, Mr. Batinovich testified at length about IPAC's manufacturing

28 operations, and how the landlord's postpetition eviction activities had disrupted operations and

caused losses to the debtor in possession.

At the November 30, 2007, Chapter 11 status conference, the Court's minutes (Main Case) reflect a continuance to February 2008 to permit completion of filings. As reflected in the Court's opinion stated on the record in open court on July 16, 2010 in this adversary proceeding, and the recording of the November 30, 2007, Chapter 11 status conference, despite having just filed Schedules to the contrary, Debtor's counsel on November 30, 2007, again represented to the Court that Debtor was still in the process of moving out of the San Jose Premises in accordance with the representations made in the case management statement. [Transcript July 16, 2010, AP ECF #33, page 6, lines 5-10.] Mr. Batinovich was in the Courtroom and made no additional or contradictory report. That very same day, Mr. Batinovich told his counsel:

> "I wish to file a motion to withdraw from C-11 next week...providing it would not jeopardize anything related to our ability to stay here through 9th of December!"

The business was successfully moved before the landlord of the San Jose Premises was again entitled to evict pursuant to the relief from stay order that allowed Debtor until December 10, 2007. On December 11, 2007, Debtor's attorney filed a notice of change of address [ECF #37] stating that Integrated Packaging Assembly Corporation's new address was changed to 3399 West Warren Ave., Fremont, CA 94538.

After the move was completed, Mr. Batinovich changed his tune and claimed that the debtor-in-possession had no business operations, no employees, and no assets other than some complicated litigation it was defending for the benefit of himself and his wife. IPAC's operating reports, amended schedules, and SOFA were not filed until January 25, 2008. Mr. Batinovich finally produced a document purporting to accomplish sale of IPAC's assets to i2a Technologies, bearing the date January 28, 2006 (the "APA" or Asset Purchase Agreement), and signed by Mr. Batinovich on behalf of both buyer and seller. The document is worded oddly, giving rise to an inference of back-dating.

OORA and the United States Trustee filed motions to convert Debtor's Case to Chapter 7 in June of 2008 [Main Case ECF #96 and #99, respectively]. They urged that a Chapter 7 trustee should be appointed to obtain redress for what had occurred.

Mr. Batinovich was not confused about what he had done. He commented to Debtor's

attorneys by email dated June 25, 2008, regarding his options:

> "2. Leave it up to the judge - take a risk of him rolling it into C-7 and appointing another person to annoy me.
>
> "You mentioned, if we voluntarily pull out - the judge may be angered / may not like that. In no way did we abused the system, however, we used our judicial system to preserve our operation at that particular site which otherwise would have been destroyed (we can argue semantics associated - however that was the bottom line)! So we all get over that part."

But Mr. Batinovich continued to describe the business as being IPAC's:

> "My desire is to preserve (if all possible) IPAC (acronym as well as the entire name - it is important). There may not be value for it here and locally, however, for doing business in South East Asia that name is well recognized and accepted. We (IPAC) were the 1st company in this semiconductor assembly universe ever to go public (the 1st one ever to list on NASDAQ) and we opened doors for many of our competitors to follow - and that they did!"[2]

The Court held hearings on the conversion motions filed by The United States Trustee and OORA, and finally put Mr. Batinovich to the choice of dismissal of the Chapter 11 and pursuit of causes of action by well-funded adversaries, versus conversion to Chapter 7 and an unfunded trustee ("to annoy me"). Mr. Batinovich chose the latter, and the Case was converted to Chapter 7.

The Trustee and her counsel have been required to expend substantial efforts to obtain redress, commencing this Adversary Proceeding in 2008, undertaking efforts to reveal the facts, responding to a motion by defendants which had no merit as applied to what the Trustee was actually pursuing, and persisting through substantial delays and extra expense engineered by Defendants in connection with changes of counsel and choices to do without counsel. And as trial approaches in 2011, in fact the operating business still uses the IPAC name along with the name i2a Technologies. The business still uses the "ipac" email addresses. It issued a press release about i2a Technologies' purported acquisition of the IPAC business only <u>after</u> the operating business was moved to the new Fremont premises.

## ARGUMENT

Who or what filed the Chapter 11 bankruptcy petition on October 31, 2007, and what are

---

[2] Note that in the APA "as of" January 28, 2006, the trade names, goodwill, and similar assets were part of the purchase.

the assets of the bankruptcy estate?

After the date of the purported APA, Mr. Batinovich on behalf of a business that called itself IPAC obtained counsel and litigated in State Court on the basis that as plaintiff in the 2006 Action it was an operating business with substantial assets and employees, being injured by the actions of its landlords and their agents. The business that called itself IPAC had major creditors OSE and OORA, and pursued litigation with them through various attorneys.[3] Time was obtained to relocate the business. The operating business that called itself IPAC filed Chapter 11 to obtain yet more time to relocate the business, and it succeeded in reversing OORA's eviction efforts pursued postpetition resulting from IPAC's prepetition stipulation, and further succeeded in accomplishing the actual move through defending relief from stay and obtaining a court order that provided sufficient time. Contrary to defendants' assertions during the course of this adversary proceeding, there was not just one "mistake due to confusion," but instead a series of consistent and coordinated representations under penalty of perjury and in court filings and appearances, that achieved the desired results. If defendants had instead taken the position that they have later taken such as in this adversary proceeding, they would not have obtained the desired result of avoiding eviction and moving a going concern to new premises. In addition, the defendants desired then, and still desire, to continue to be identified as IPAC and Integrated Packaging Assembly Corp. With extreme chutzpah, they have been using the assets of the estate without paying for them and without having sought or obtained a court order shielding their actions. The Trustee was appointed to do something about it.

Was it one or the other of two corporations controlled by Victor A. Batinovich that filed the Case, or both? Or does it even matter given the Court's power to shape relief that upholds the integrity of the judicial system and prevents abusive behavior from succeeding to the detriment of innocent creditors?

The Trustee filed this adversary proceeding on December 5, 2008. The Trustee's first amended complaint [AP ECF #3] was filed December 9, 2008, and included claims for relief based

---

[3] Various law firms were among the creditors included in Debtor's initial filings.

on (1) rights and status granted to creditors and their representatives under California law, Cal. Civil Code §3440, 11 U.S.C. §544(a) and (b); (2) unlawful postpetition transfers, interference with the estate, concealment and receipt of assets, 11 U.S.C. §549, §362, 18 U.S.C. §152; (3) contempt of court, fraud on the court, and abuse of process, 11 U.S.C. §105(a); (4) fraudulent transfers under bankruptcy and state statutes; (5) substantive consolidation; (6) liability for avoided transfers 11 U.S.C. §550(a); (7) conversion; (8) unjust enrichment; (9) alter ego; (10) objection to claim and subordination; and (11) sanctions including legal expense, 11 U.S.C. §105(a). By order resulting from a motion brought by defendants, the Trustee cannot pursue damages under 11 U.S.C. §362(h) or 18 U.S.C. §152 [AP ECF #33 (Transcript), #44].

### A.     The Business that Sometimes Calls Itself i2a Technologies is the Debtor.

Defendant i2a Technologies appears before the Court claiming to own the operating business. The evidence supports the conclusion that i2a Technologies (if it is treated as the buyer of the operating business) and the Debtor that filed the Chapter 11 petition on October 31, 2007, are one and the same. Property of the estate remains property of the estate until administered. Property of the estate is broadly defined to include what continues to be generated from property of the estate, including from its customer contacts and goodwill. The Trustee should be granted recovery by turnover of the business itself, and to the extent that defendants are considered to have "run off" with the operating business and its assets, the Trustee should recover by avoidance of postpetition transfers, or on account of conversion or unjust enrichment

Defendant i2a Technologies has never contended that it received title to the operating business postpetition, so it must be the Debtor if in fact i2a Technologies was the owner on October 31, 2007. Mr. Batinovich was the duly designated responsible person for the Debtor. He spoke for the Debtor as the person speaking for the operating business. As the principal officer of i2a Technologies, his acts bind it. Mr. Batinovich effectively placed the operating business into bankruptcy. The Debtor through Mr. Batinovich told the Court that it was relocating the property of the estate to new premises in Fremont, California. Take it at its word.

If there were a January 28, 2006 APA, i2a Technologies was granted the right to use the IPAC names. It filed a bankruptcy petition in the IPAC names, never purported to accomplish any

postpetition purchase or other transfer of the names IPAC or Integrated Packaging Assembly Corp, nor its "ipac.com" email account, yet it is continuing in operation using those Debtor names.

**B.  Transfer of Assets without Immediate and Continuing Transfer of Possession is Void.**

Of course the Court may justifiably conclude that Mr. Batinovich lacks credibility, and that the purported APA is a sham invented by him to escape the consequences of the bankruptcy filing by use of another corporate entity that he had handy.[4]  The Trustee seeks turnover of the assets of the bankruptcy estate, the operating business, on that basis, and additionally seeks an accounting and damages from the defendants as having converted the estate's property.  But there is also an alternative that is worth the Court's consideration.

The evidence supports the conclusion that if there were a January 28, 2006 APA that might have been effective as between the buyer and the seller, it is nevertheless void as against the rights and powers of the trustee in bankruptcy pursuant to California law, California Civil Code §3440. Therefore the identity of the business that filed the bankruptcy petition becomes irrelevant as a practical matter, except only as to property, if any, that the buyer owned prior to the sale.

At the material times, Cal. Civ. Code §3440(a) provided as follows:

> "(a) Except as otherwise provided in this chapter, every transfer of personal property made by a person having at the time the possession of the property, and not accompanied by an immediate delivery followed by an actual and continued change of possession of the property, is void as against the transferor's creditors (secured or unsecured) at the time of the transfer and those who become creditors while the transferor remain in possession and the successors in interest of those creditors, and as against buyers from the transferor for value in good faith subsequent to the transfer."

This section is applied in bankruptcy in favor of trustees.  *In re Verco Industries*, 704 F.2d 1134, 1136 (9th Cir. 1982) (machinery, tools, and a building lease used in manufacturing practice bombs); *In re Murrieta Hot Springs*, 6 B.R. 73 (Bankr. C.D. Cal. 1980) (boilers left on bankrupt's

---

[4]  For example, the APA refers to the property sold as the "Manufacturing Business" and to most categories of assets by general labels only and not by specifics, rendering it unclear to what extent the seller retained assets and continued in business at the same premises, which it apparently did.  Given the supposed transfer of trade names by the APA ¶1.1(d) (yet Mr. Batinovich still indicated in 2008 his concern whether they could be kept), and ambiguities one could conclude that the APA document was invented later and does not reflect the underlying reality.  Other significant issues are presented by the APA, such as the lack of observable, confirmable payment of consideration, since there was no payment of money, APA ¶1.2.

premises).

There must be outward signs that the transferor's possession has <u>wholly</u> ceased. *Southern California Collection Co., Inc., of Los Angeles v. Napkie et al.*, 106 Cal. App.2d 565, 570 (1951) (also, "No writings pertaining to the transfer, regardless of number or character, can be substituted for actual and continued change of possession." *Id.*)

"Symbolic delivery and unobservable transfer of possession are insufficient." *Murrieta* at 77. *Murrieta* provides substantial citation to California cases for the principles relevant to the within facts.

The existence of a single creditor who could avoid the transfer is sufficient for the Trustee to have rights to recover 100% of the property. *Moore v. Bay*, 284 U.S. 4 (1931). And the statute itself confers rights on the representative of creditors.

**C.    Judicial Estoppel Applies to Any Contrary Contention by Defendants.**

Under the facts of this case, the Court should judicially estop the defendants from claiming that a virtually empty corporate shell filed Chapter 11, and that the going concern value, good will (even Debtor's name), operations and assets were instead owned by a separate corporation that did not file bankruptcy.

> "Judicial estoppel, sometimes known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, then seeking another advantage by taking an inconsistent position." [citations omitted]

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 601 (9th Cir. 1996). The doctrine is intended to protect the dignity of the judicial process. *Id.* Even a favorable settlement constitutes success. *Id.* At 605. In the instant case, the operating business obtained success by invoking the automatic stay, getting itself un-evicted post-petition, and defending against stay relief and obtaining an order that accomodated the change of premises.

**D.    Justice Requires Alter Ego Judgments against Mr. Batinovich and i2a Technologies.**

The Court should use the doctrine of *alter ego* not in the shoes of any creditor, but instead in its own "shoes" in upholding the integrity of its own process where otherwise the Court and the constituents of the Case would be the victims of fraud and deceit. The bankruptcy estate, through its authorized representative, asserts *alter ego* on the estate's own behalf rather than standing in the

shoes of prepetition creditors or depending on rights granted to corporations by state law, to redress defendants' efforts to deprive it of recourse. Questions about the doctrine of *alter ego* that were resolved somewhat divergently in *Ahcom Ltd. v. Smeding*, 623 F.3d 1248 (9th Cir. 2010) as opposed to *In re Schwartzkopf*, 626 F.3d 1032 (9th cir. 2010), do not address the circumstances where the Court itself and the bankruptcy estate itself seek to apply *alter ego* to what was filed as a single economic unit of two purportedly separate corporations and the representations made by the officer/director/shareholder/responsible person who controlled it all and had just as much ability to make the operating business the asset of whoever filed the petition, as he had to sign the APA as both buyer and seller. Failure to find *alter ego* would sanction a fraud and promote injustice. 623 F.3d at 1040.

**E.    Sanctions for Fraud on the Court and Abuse of Process are Appropriate.**

The evidence supports the conclusion that Mr. Batinovich, whose acts are attributable to i2a Technologies, intended in the future to claim that the Debtor's operating business was not owned by the Debtor, and intended to steal away with it and thwart the bankruptcy process, while nevertheless obtaining benefits in the Chapter 11 by concealing these intentions, which were in fact later acted upon by Mr. Batinovich and i2a Technologies. This constituted fraud on the Court and abuse of process, which was in bad faith, and warrants sanctions under 11 U.S.C. §105(a). It also constituted unfair litigation practices when one considers the manner in which the Debtor incurred debts to OORA its landlord, required OORA to reverse its eviction measures taken postpetition, required OORA to bring a stay relief motion which the Debtor vigorously contested, and obtained concessions (and an order) that met Debtor's goals, while planning to make illusory the accountability and application of assets to claims that the bankruptcy system contemplates. The cost of redress has been substantial.

Bankruptcy Courts have an inherent authority to sanction bad faith or willful misconduct. See In re Dyer, 322 F.3d 1178, 1196 (9th Cir. 2003). This power is impliedly recognized in 11 U.S.C. § 105(a). See id. The bankruptcy court's inherent authority "allows a bankruptcy court to deter and provide compensation for a broad range of improper litigation tactics." Id. (citing Fink v. Gomez, 239 F.3d 989, 992-93 (9th Cir. 2001). Bad faith or conduct tantamount to bad faith is

required to impose sanctions pursuant to the Court's inherent authority. See id. To impose sanctions under the Court's inherent authority, a court must find that a party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. Nasco, Inc., 501 U.S. 32, 45-46, 111 S. Ct. 2123 (1991)(citations omitted). A party can show bad faith by delaying or disrupting litigation. See In re Deville, 280 B.R. 483, 496 (BAP 9th Cir. 2002). "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." Fink v. Gomez, 239 F.3d at 994.

Abuse of process has been discussed previously in this adversary proceeding, when defendants erroneously contended that dismissal of the Case was the exclusive remedy. The Court then ruled that MSR Exploration v. Meridian Oil, 74 F.3d 910, 915-916 (9th Cir. 1996), provided to the contrary. The Court has wide lattitude to fashion relief under 11 U.S.C. §105(a) that is appropriate to redress the conduct encountered and to prevent a fraud on the Court from being successful. Sanctions are imposed to prevent abuse of the judicial system. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 115 L.Ed.2d 27 (1991). The conduct of the defendants in this cases is certainly of such a disturbing nature that the Court's inherent powers should be applied with rigor. See, *In re Advanced Modular Power Systems, Inc. (West v. Hsu)*, 413 B.R. 643, 664-665 (Bankr. S.D. Tex. 2009), which is based on somewhat similar facts and involves a wide array of similar approaches by the Chapter 7 trustee. There as here, the defendants assumed and exercised control over the debtor's business and were required to turn over and account for the property, including any conversion in the form of property and anything of value generated by property of the estate. *Id.* at 670-671.

**F.     The Secured Claim of Victor A. Batinovich Should be Subordinated.**

Victor A. Batinovich obtained the IPAC assets from OSE not by capitalizing IPAC appropriately for its manufacturing business, but instead by an unpaid obligation of IPAC to OSE, and by documenting a debt made payable to himself, which he later caused to be secured by IPAC property. He has produced a purported APA by which IPAC was later stripped by him of it assets while in a dispute with its successive landlords and with OSE. His actions in connection with the bankruptcy case were intended to deprive the estate of any source from which to pay claims,

including the claim of Manasian & Rougeau LLP. These are bad acts in connection with his own purported claim that justify subordination pursuant to 11 U.S.C. §510(c) to the payment of all classes of creditors, if the claim is not disallowed as fictitious or recharacterized and disallowed as in the nature of equity capital.

The unfair and abusive nature of Mr. Batiovich's actions in this Case meet the standards for subordination reviewed in *In re Palmdale Hills Property LLC*, 423 B.R. 655, 666-667 (B.A.P. 9th Cir. 2009). Principles of equity would be offended by allowing Mr. Batinovich's claim ahead of or on a par with the claims of arms-length creditors whose right to recover through bankruptcy administration of their debtor's assets he has sought to thwart.

**G.  Consolidation of Non-Debtors with Bankruptcy Estate.**

The Trustee does not consider consolidation of non-debtors with the bankruptcy estate to be the most appropriate remedy following from the facts alleged and to be proved. However, in view of the Court's wide latitude to fashion relief, the Trustee notes *In re Bonham*, 229 F.3d 750, 763-766 (9th Cir. 2000) for guidance. Although defendants have previously argued that their creditors must first be given notice, defendants have not chosen to identify those creditors who would be in existence in November of 2011, four years after defendants ceased respecting the bankruptcy court's jurisdiction over assets and operations that were at a minimum in the possession of debtor on the debtor-in-possession's physical premises and in the debtor's responsible person's practical control on the petition date. The Trustee suggests that measures for bifurcation of trial and additional notice be undertaken as may appear appropriate to the relief being considered by the Court.

## CONCLUSION

The facts to be established at trial lead to the ultimate fact and conclusion that the operating manufacturing business, with all its assets, was the debtor that filed bankruptcy on October 31, 2007, and accordingly all of the "i2a Technologies" business in Fremont, California, should be surrendered to the Trustee. This is bolstered by California Civil Code Section 3440 to the extent required.  To the extent necessary to provide full relief to the bankruptcy estate, defendants are liable for sanctions pursuant to the Court's inherent authority under 11 U.S.C.

§105(a). The complete amount of costs of redress are not yet available, and so it may be appropriate to resolve this part of the award by subsequent application of the Trustee with an opportunity to object. Not only is Mr. Batinovich's creditor claim, if any, properly subordinated, but it makes no sense for the Trustee to be required to liquidate property for a person who through inappropriate "self-help" has helped himself to funds that should have been in the bankruptcy estate for the intervening period. Therefore, any claim should be deemed satisfied.

Dated: October 17, 2011.   Respectfully submitted,

STROMSHEIM & ASSOCIATES

_____/s/_____Reidun Strømsheim_____
Attorneys for
CAROL W. WU, Trustee, Plaintiff